**NATIONAL LABOR RELATIONS BOARD v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, etc., LOCAL UNION NO. 41, A.F.L.**

No. 14457.

United States Court of Appeals Eighth Circuit.

April 29, 1952.

Rehearing Denied June 2, 1952.

Elizabeth W. Weston, Attorney, National Labor Relations Board, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and John E. Jay, Attorney, National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

John J. Manning, Kansas City, Mo. (Clif. Langsdale, Kansas City, Mo., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

On September 20, 1951, the National Labor Relations Board filed its petition in this

court pursuant to § 10(e) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., for enforcement of its order of June 26, 1951, against the above named respondent. This court has jurisdiction of the proceeding, the unfair labor practices alleged having occurred at the place of business of Byers Transportation Company, Inc., located in Kansas City, Missouri, within this circuit.

The proceeding was commenced by a charge filed with the Board by one Frank Boston, an employee of the Transportation Company. He alleged that the respondent was engaging in an unfair labor practice affecting commerce within the meaning of the Act, in that, about July 1, 1950, the respondent caused the Employer Company to terminate his seniority, causing him to lose wages for reasons other than his failure to tender the periodic dues and fees uniformly required as a condition of acquiring or retaining membership in Local Union No. 41, A.F.L. Based upon the charge a complaint was filed against the respondent, a hearing was had before a Trial Examiner, whose intermediate report was largely adopted by the Board with one member dissenting.

The Board found that the employer, Byers Transportation Company, is engaged as a common carrier in motor transportation, whose operations are subject to regulation by the Interstate Commerce Commission;

that Frank Boston is one of its employees; that the employer and the respondent had entered into an agreement in force at all times pertinent to the issues; and that no union-shop agreement existed between them.

The evidence showed that the contract contained a clause making union membership a condition of employment, but that the union did not obtain the statutory authorization necessary to validate it so that the clause never became operative.

Boston failed to pay his June, 1950, union dues until July 5, 1950. Because of his failure to pay said dues for June on or before July 2d, as provided by a bylaw of respondent, he lost his seniority rights; and since such dues were not paid until July 5th, the respondent, on July 15, 1950, requested the employer to reduce his seniority from the 18th place on the list to the 54th, or bottom of the list. This was done, and as a consequence Boston lost assignments for two trips for which he otherwise would potentially have received pay of $28.05 on each trip.

Upon these facts the Board found that respondent caused the employer to discriminate against Boston within the meaning of § 8(a) (3) of the Act, thereby itself violating § 8(b) (2), and that respondent also restrained and coerced Boston in the exercise of his statutory rights in violation of § 8(b) (1) (A) of the Act.[1]

---

I. So far as pertinent the Act provides:

"§ 8(a) It shall be an unfair labor practice for an employer—

\* \* \* \* \* \*

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: \* \* \*."

"§ 8(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; \* \* \*

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3)

of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; \* \* \*."

"§ 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3) of this title."

And the Board ordered the respondent:
1. To cease and desist from

(a) Causing or attempting to cause the Transportation Company to reduce the seniority of, or otherwise discriminate against, any of its employees because they are delinquent in the payment of their dues to the union except in accordance with § 8(a) (3) of the Act;

(b) In any manner attempting to cause the employer to discriminate against any of its employees in violation of § 8(a) (3) of the Act; or

(c) Restraining employees of the company in the exercise of the rights guaranteed them in § 7 of the Act.

2. Affirmatively

(a) Notify Boston and the company that it withdraws its request that Boston's seniority be reduced and that it requests that the company offer him immediate reinstatement;

(b) Make Boston whole for any losses of pay suffered because of the discrimination against him; and

(c) Post notice that it will do none of the things which it is ordered not to do.

The respondent contends here that there is no basis in the evidence for the findings of the Board; whereas the Board insists that its findings and order are supported by the facts.

The agreement between the Transportation Company and the union established a seniority system under which the employees bid for truck driving assignments according to their relative places on the seniority list, and they were subject to layoff inversely to their standing. New employees after a 30-day trial were placed at the bottom of the list. The agreement provided, also, that the seniority could be broken or lost only by discharge, voluntary quitting, or more than a two-year layoff. The company submitted a list of its employees to the union with the anniversary dates of their employment, and the agreement further provided:

"* * * A list of employees arranged in the order of their seniority shall be posted in a conspicuous place at their place of employment. Any controversy over the seniority standing of any employees on this list shall be referred to the Union for settlement."

One of the bylaws of the union provides: "Sec. 45. Any member, under contract, one month in arrears for dues shall forfeit all seniority rights * * * (a) * * *. On the second day of the second month a member becomes in arrears with his dues."

Thus the union was able under its agreement with the Transportation Company to call on the company as employer of its members to punish members delinquent in the payment of their dues in violation of said bylaws; and, as the Board found, thus, to discriminate against an employee "in regard to hire or tenure of employment or a condition of employment * * *."

On this point the Board said: "We agree with the Trial Examiner that the employer, by reducing Boston's seniority for being delinquent in the payment of his union dues, discriminated against Boston and that such discrimination would constitute a violation of Section 8(a) (3) of the Act, where, as in this case, the Respondent had not obtained a union-shop contract or a certification pursuant to Section 9(e) of the Act * * *. For, in so doing an employer would be strengthening the position of such union contrary to the well-established principle that an employer's acceptance of the determination of a labor organization as to who shall be permitted to work for it is violative of Section 8(a) (3) where no lawful contractual obligation for such action exists."

The evidence here abundantly supports the finding of the Board that the respondent caused or attempted to cause the employer to discriminate against Boston in regard to "tenure * * * or condition of employment". This was a violation of § 8 (b) (2) of the Act.

The question confronting us, therefore, is whether there is substantial evidence to support the finding that such discrimination would or did "encourage or discourage membership in any labor organization" in violation of § 8(a) (3) of the Act. Discrimination alone is not sufficient.

The respondent argues that there is no basis for the Board's finding, in that there

is no evidence in the record to sustain the finding, citing Labor Board v. Reliable Newspaper Delivery, Inc., 3 Cir., 187 F.2d 547.

In addition to the facts stated above Boston testified that he had been employed as a truck driver for a little more than four years and that during all of that time he had been a member of Local 41 and is still a member thereof; that he failed to pay his dues for the month of June, 1950, until July 5th following, and that he thereby violated a union bylaw. On cross-examination he testified that he had requested the Regional Director to permit him to withdraw the charge he had filed and that he was denied that privilege. He was a member of the union at the time the bylaw, Section 45 supra, under which he lost his seniority, was passed; and he filed the charges against the union to get rid of that rule.

The rule to be applied by this court in determining the validity of the Board's finding is set out in § 10(e) of the National Labor Relations Act as amended in 1947 by the Labor Management Relations Act, known as the Taft-Hartley Act, 61 Stat. 148, 29 U.S.C.A. § 160(e). This section reads: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." See Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Labor Board v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479.

Having considered the record as a whole we can find no substantial evidence to support the conclusion that the discrimination in regard to the tenure or condition of employment of Boston did or would encourage or discourage membership in any labor organization. The testimony of Boston refutes such a conclusion. Theoretically such an act might have such an effect. But in this case we find no substantial evidence that it did or would have such effect. "Sub-stantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. Quoted in Universal Camera Corp. v. Labor Board, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456. It "must do more than create a suspicion of the existence of a fact to be established." Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660.

The meaning of the statute in its application to different circumstances may be debatable. Clearly § 8(a)(3) may be read thus: It shall be an unfair labor practice for an employer to encourage or discourage membership in any labor organization by discrimination in regard to hire or tenure of employment or any term or condition of employment.

In this instance the discrimination occurred when the employer, caused by the act of the union in violation of § 8(b)(2), reduced Boston's seniority from the 16th to the 54th place on the list of employees.

The testimony of Boston, however, shows clearly that this act neither encouraged nor discouraged his adhesion to membership in the respondent union. The question then is, Would the act of the union encourage or discourage other employees who might learn what had been done?' Unless the statute may be interpreted to apply to such other employees there is no evidence substantial or otherwise to sustain the order of the Board. If, on the other hand, it must be so construed, then the order is supported only by "suspicion" and speculation. There is no evidence in the record either substantial or in the nature of a scintilla to support it.

The petition of the Board for a decree enforcing its order must, therefore, be and it is denied.