**William P. McNAMAR, Plaintiff,**

v.

**BALTIMORE & OHIO CHICAGO TERMINAL RAILROAD COMPANY, a Corporation, and Brotherhood of Railway Trainmen, Defendants.**

**Civ. No. 1842.**

United States District Court,
N. D. Indiana,
Hammond Division.

July 16, 1957.

Straley Thorpe, Eugene Tyler, and Henry S. Kowalczyk, Hammond, Ind., for plaintiff.

S. R. Prince, Charles G. Rettberg, Jr., Baltimore, Md., Charles G. Bomberger and Bomberger, Wilson, Crites & Belshaw, Hammond, Ind., for Baltimore & Ohio Chicago Terminal Railroad Company.

John J. Naughton and Henslee, Monek & Murray, Chicago, Ill., and Timothy Galvin, Hammond, Ind., for Brotherhood of Railway Trainmen.

SWYGERT, Chief Judge.

William P. McNamar filed this action in the Lake County Superior Court on September 2, 1955, against the Baltimore and Ohio Chicago Terminal Railroad Company (B & OCT) and the Brotherhood of Railway Trainmen (BRT) asking for $125,000 damages. The case was removed to this court.

Plaintiff alleges in his complaint that before October 21, 1954, he was employed as a switchman by the B & OCT and that on that day the railroad terminated his employment on the ground of non-compliance with a Union Shop Agreement between the railroad and the brotherhood. He alleges that under this collective bargaining contract he " * * * acquired the right to remain an employee of the said railway company during his life * * *"; further, that the brotherhood, through its officers and agents "* * * wilfully and wantonly, * * * without any justifiable and lawful reason * * *" demanded that the railroad discharge the plaintiff from his employment; that this was for the purpose of depriving the plaintiff of his seniority rights and for the benefit of the officers and agents of BRT; that the railroad, knowing of this purpose on the part of BRT, "wilfully and without regard for the rights of this plaintiff, * * * aided, abetted and furthered the wrongful and willful designs * * *" of BRT by discharging him from his employment, " * * * all without any justifiable or lawful reason * * *".

The action is pending on the defendants' motion for summary judgment, the defendant B & OCT's second defense alleging the failure of plaintiff to state a cause of action upon which relief can be granted, and the railroad's motion for judgment on the pleadings. All motions have been heard.

The undisputed facts as shown by the pleadings and affidavits are these. Since November 5, 1933, members of the switchmen craft have been employed by the B & OCT under a collective bargaining agreement with the BRT. Article 41(c) of the agreement, known as the "schedule", provides in pertinent part as follows:

> "In case the suspension, dismissal or censure is found to be unjust, yardmen or switchtenders shall be reinstated and paid for all time lost."

A supplementary contract, known as the Union Shop Agreement, was entered into between the railroad and the union on September 20, 1951, and became effective on October 1, 1951. This agreement provides that members of the craft "as a condition of continued employment" must become members of the BRT within 60 days of the date they first perform compensated service and that "thereafter shall maintain membership in the Brotherhood." It also provides that this requirement of membership " * * * shall be satisfied if any employee shall hold or acquire membership in any one of the labor organizations, other than the Brotherhood, national in scope, organized in accordance with the Railway Labor Act"; that this is not to prevent an employee from changing membership from one union to another.

The plaintiff began working for the B & OCT on October 6, 1939, and was a member of the BRT on October 1, 1951.

On February 7, 1952, plaintiff became a dues-paying member of the United Railway Operating Crafts Organization (UROC) and on February 19, 1952, he notified the BRT he would no longer pay dues to that organization having elected to become a member of UROC. The BRT, in turn, notified the B & OCT that plaintiff was no longer complying with the membership requirements of the Union Shop Agreement. The plaintiff was informed of the Brotherhood's charge and the plaintiff thereupon demanded a hearing as provided by the Union Shop Agreement. This hearing was held on April 11, 1952.

On July 16, 1953, the representative of the B & OCT who heard the charge decided that the UROC was the only labor organization to which plaintiff belonged at the time of the hearing and that UROC was not a labor organization "national in scope" within the meaning of the Railway Labor Act; that the plaintiff had failed to comply with the Union Shop Agreement, and that his employment with the B & OCT should terminate on July 27, 1953.

On July 27, 1953, the plaintiff appealed the decision to the Vice-President of Personnel of the B & OCT in accordance with the administrative procedures of the Union Shop Agreement. The appeal was heard on July 29, 1953. At this hearing the plaintiff was permitted to show that he had become a member of the Switchmen's Union of North America (SUNA) on July 1, 1953, and that this union was a labor organization which was recognized as being "national in scope." The appeal was decided August 14, 1953, affirming the original decision, and the plaintiff was notified that his employment with B & OCT would end on August 28, 1953.

Thereafter the plaintiff filed a complaint in the United States District Court in Chicago seeking a permanent injunction against his discharge by the B & OCT. The complaint was dismissed for want of jurisdiction, and the plaintiff was notified by the railroad that he would be discharged on October 9, 1955.

The plaintiff filed another action in this Court seeking an injunction to prevent his discharge. A motion to dismiss his complaint was sustained and finally, on October 22, 1955, the employment of the plaintiff by the B & OCT was terminated. The present suit followed.

■ One of the grounds urged in support of defendants' motion for summary judgment is that jurisdiction of the action is vested exclusively in the National Railway Adjustment Board by reason of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. For reasons developed hereafter I do not think that the Railway Labor Act pre-empts jurisdiction from this court.

It should first be noted that diversity of citizenship exists and that the court has jurisdiction unless the causes of action sought to be enforced are matters of federal right given by statute over which the Adjustment Board has exclusive jurisdiction. Pennsylvania Ry. Co. v. Rychlik, 1957, 352 U.S. 480, 485, 77 S.Ct. 421, 1 L.Ed.2d 480.

This action is for damages for wrongful discharge brought by a former employee against both the railroad and the brotherhood. It is not an effort by the plaintiff to be reinstated and it is not a grievance prosecuted by the brotherhood or by an employee against the employer in regard to a matter arising out of the interpretation or application of a collective bargaining agreement. It is true that the basis of the action is such a contract; but the action involves more than that. It has to do with an alleged breach of a contract which resulted in plaintiff's discharge and a claim that both the railroad *and* the brotherhood should respond in damages. The suit also involves an interpretation of the statute. The incorporation of the pertinent parts of the Railway Labor Act into the agreement makes it no less so. The *ratio decidendi* by which the Supreme Court sustained the courts' jurisdiction in Moore v. Illinois Central Railroad Company, 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, and in Steele v. Louisville & Nashville Railroad Co., 1944,

323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, are applicable and must be applied here. See: Rose, "The Railway Labor Act and the Jurisdiction of the Courts", 8 Lab.L. J. 9 (1957).

Having concluded that the court has jurisdiction of the action, the other grounds asserted by the defendants for judgment in their favor must be considered.

■ One of the grounds stated in the defendants' joint motion for summary judgment reads as follows: "Facts before the Court prove that plaintiff was discharged by defendant for violation of the applicable collective agreement, called the 'Union Shop Agreement', after due proceedings required by that agreement, and upon a *bona fide* interpretation and application of the provisions of said agreement by defendant." The material facts underlying this specific ground for summary judgment are not in dispute. They appear in the pleadings and affidavits on file. A recital of them has been made in the antecedent paragraphs. The sole question is whether the defendants are entitled to judgment as a matter of law.

The Rychlik decision definitely and finally decides the UROC is not "one of the labor organizations which are national in scope, organized in accordance with the [Railway Labor] Act" [352 U.S. 480, 77 S.Ct. 429] and therefore, it is not a labor organization qualified under Section 3, First of the Act. That decision further holds, 352 U.S. 496, 77 S.Ct. 429, that " * * * an employee has available to him alternative membership only in such unions as have already qualified as electors under Section 3." Consequently, plaintiff's membership in UROC did not constitute an alternative union membership which was in accord with the Union Shop Agreement or with the Act.

It is undisputed that plaintiff acquired membership in a qualified labor organization other that the BRT; however, that occurrence, i. e., his becoming a member in SUNA, took place on July 1, 1953, sixteen months after he quit his membership in the BRT on March 1, 1952. Section 1 of the Union Shop Agreement provides that " * * * as a condition of their [employees'] continued employment * * * [they shall] become members of the Brotherhood within sixty (60) calendar days of the date they first perform compensated service as such employees after the effective date of this agreement, and thereafter shall maintain membership in the Brotherhood". The agreement further provides that " * * * nothing contained in this agreement shall prevent any employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of the services above [therein] specified"; this of course, and the agreement so specifies, is further limited to any one of the other organizations qualified under the Act to afford alternative membership.

It might be contended that an employee has a sixty-day grace period under the terms of the contract after terminating membership in the BRT to acquire alternative membership in another qualified union. However, I do not construe the agreement to mean that. In my opinion, if an employee wants to change membership from one union to another he must make such memberships conterminous or run the risk of being discharged. But this point is of little or no materiality, because the plaintiff, in the eyes of the law, was not a member of any of the qualified labor organizations for several times the sixty-day period after voluntarily quitting his membership in the BRT.

This termination of membership in the BRT and failure to acquire alternative membership in another qualified labor organization on the part of the plaintiff constituted a breach by him of the Union Shop Agreement. It was a breach of a provision of the agreement which is specifically sanctioned by the Railway Labor Act. Plaintiff's breach permitted the BRT to exercise its rights under the terms of the Union Shop Agreement, i. e. to notify the carrier of his failure to

comply with the terms of the agreement and to insist that he was no longer entitled to continue in employment. An administrative hearing was afforded the plaintiff in accordance with the terms of the agreement; likewise, an appeal was taken and an administrative review made in accordance with those terms. It was decided that the employment of the plaintiff should be terminated. Regardless of any alleged infirmities in such administrative procedure, the simple and uncontroverted fact remains that the carrier had the right, as well as the duty, to discharge the plaintiff upon demand of the BRT by reason of his failure to comply with the terms of the Union Shop Agreement.

The agreement further provides that, "The receipt by the carrier of a request for a hearing shall operate to stay action on the termination of employment until the hearing is held and the decision of the carrier is rendered." The fact that the plaintiff acquired membership in SUNA before his appeal was heard and decided did not affect the right *and* duty of the B & OCT to discharge the plaintiff for nonperformance of a term of the contract. Such tardy acquisition of membership in a qualified labor organization could not have a retroactive effect. If it were otherwise, the requirement in the contract of continuous membership in one or another qualified union would be meaningless and rendered a nullity.

In his complaint, the plaintiff charges that the " * * * officers and agents of the Brotherhood of Railway Trainmen for the purpose of depriving the plaintiff herein of his seniority rights which were senior to theirs, and for their own benefit and without regard for this plaintiff's rights in and to the aforesaid contracts of employment, and without regard for the duties and responsibilities which they had taken upon themselves for the protection of his rights * * * wilfully and wantonly * * * and all without any justifiable and lawful reason therefor, demanded that the officers of defendant railroad, discharge this plaintiff

from his employment". He further charges "That the officers of said railroad company well knowing the facts aforesaid, and the wrongful and oppressive purpose on the part of the officers and agents of the defendant Brotherhood of Railway Trainmen, wilfully and without regard for the rights of this plaintiff, as aforesaid, aided, abetted and furthered the wrongful and willful designs of the officers and agents of the Brotherhood of Railway Trainmen, as aforesaid, by discharging the plaintiff from his employment, all without any justifiable or lawful reason, as aforesaid."

An additional charge is made in plaintiff's affidavit to the effect that he is the victim of a discrimination, since others less active than he in UROC were reinstated as employees even though they were guilty of a similar breach whereas he was discharged. But these charges, even if proved, could avail the plaintiff nothing. Once it becomes apparent that the plaintiff initially, voluntarily and deliberately breached the Union Shop Agreement, the motives which prompted the defendants to act within their contractual and statutory rights are immaterial. Whether these motives were "good" or "bad", whether they were of an inimical, vindictive or discriminatory nature directed toward the plaintiff or were partially or wholly selfish are of no materiality once it is established that the respective rights to discharge him on the part of the B & OCT and to demand his discharge on the part of the BRT came into existence by reason of the plaintiff's breach of the agreement, provided, of course, such breach was in no way induced or waived by the defendants. There is no claim of inducement or waiver and no facts are shown within the framework of the pleadings and affidavits which would constitute either of these elements.

I am impelled to grant the defendants' motion for summary judgment for the foregoing reasons. This being my conclusion, the other grounds asserted by

the defendants in support of their motions for summary judgment and judgment on the pleadings need not be considered.