Fred H. SHIELS, Robert L. Swafford, Keith U. Clark, and R. D. Vernon

v.

The BALTIMORE AND OHIO RAILROAD COMPANY.

No. IP 56-C-231.

United States District Court
S. D. Indiana,
Indianapolis Division.

Aug. 30, 1957.

918

George Rose, Indianapolis, Ind., for plaintiffs.

Martz, Beatty & Wallace, Indianapolis, Ind., S. R. Prince and Joseph C. Wallace, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

Fred H. Shiels and three similarly situated former employees of The Baltimore and Ohio Railroad Company (B&O) instituted this action on August 3, 1956, in the Superior Court of Marion County against B&O, asking $125,000 damages each for wrongful discharge. The case was removed to this court. This court has general jurisdiction by reason of diversity (28 U.S.C. § 1332) and because the proceeding arises under an act regulating commerce, as will appear. (28 U.S.C. § 1337). B&O's defense of jurisdictional pre-emption arising out of the primacy of the jurisdiction of the National Railroad Adjustment Board (NRAB) will be disposed of below.

Prior to the termination of their employment, plaintiffs were firemen in the craft represented for a long time on the B&O by the Brotherhood of Locomotive Firemen and Enginemen (BLF&E). On October 15, 1951, the BLF&E and the B&O entered into a union shop agreement, effective November 1, 1951. That agreement was authorized by the union

shop amendment (P.L. 914, approved January 10, 1951; 64 Stat. 1238, ch. 1220) to the Railway Labor Act (45 U.S. C.A. §§ 151 et seq., at 152, Eleventh).

The union shop agreement (generally referred to below simply as the "agreement")[1] in Section 1 pertinently provides that locomotive firemen "as a condition of continued employment" must become members of the BLF&E within sixty (60) calendar days "and thereafter shall maintain membership in the Brotherhood."

Two of the plaintiffs were already members[2] and they continued their membership until July 1, 1952. Keith U. Clark, plaintiff, who was employed August 2, 1947, became a member of the BLF&E within the 60-day grace period after the effective date of the agreement. He also continued his membership until July 1, 1952. Robert L. Swafford was employed October 14, 1952. Under the agreement he was allowed a grace period of 60 days after employment to join. Despite the lapse of that period he was accepted as a BLF&E member on June 1, 1953, but he allowed his membership to lapse on July 1, 1953.

By allowing their BLF&E membership to lapse, all four plaintiffs concededly abandoned it. (Complaint, paragraph 15). Each on the date of abandonment became a member of an industrial type union, United Railroad Operating Crafts, known as UROC.

Following the abandonment of their membership in the BLF&E, due and orderly proceedings required under Section 5 of the union shop agreement were had in the case of each individual (affidavit of R. L. Harvey, paragraph 7; complaint, paragraph 11). After the BLF&E cited the four plaintiffs for nonmembership, in accordance with Section 5(a) of the agreement, B&O issued notices to each of them, pursuant to Section 5(b), and an initial union shop hearing was held.[3] Following an adverse determination by B&O in each case, the plaintiffs appealed to the highest designated officer of B&O, pursuant to Section 5(c) of the agreement. Due and orderly appeals hearings were then held in each case,[4] and the B&O held that the plaintiffs were in violation of the union shop agreement.[5] On account of a temporary injunction issued by the Superior Court of Marion County in a class suit, there was certain delay by the B&O in effecting the actual terminations of employment, but in each case, following the dissolution of the injunction, letters of termination of employment were issued on March 22, 1956, and actual employment terminated within several days thereafter.

At the union shop hearings, each of the plaintiffs relied upon his undisputed membership in UROC as a primary satisfaction of the requirements of the agreement (Harvey affidavit, paragraph 11), citing Section 2 which pertinently provides as follows:

"Sec. 2. The requirements of membership provided for in Section

1. The court will refer to the basic collective bargaining agreement providing rates of pay, rules, and working conditions as the "schedule." The schedule is comprised in two printed booklets which are before the court. The first is entitled "Rules and Rates of Pay for Firemen and Hostlers" (Rules effective June 1, 1942). The other is entitled "Supplemental Rules Agreement" (effective June 1, 1947). Concededly, the conditions stipulated in those collective bargained contracts governed the working conditions of plaintiffs.

2. Fred H. Shiels, who was employed August 26, 1946, became a BLF&E member January 1, 1948; R. D. Vernon, who was employed October 17, 1944, became a member in 1944.

3. The dates of the initial union shop hearings were as follows: Shiels December 8, 1952; Vernon February 13, 1953; Swafford November 16, 1953; and Clark February 13, 1953.

4. The appeals hearings in the four cases were held on either December 14 or 15, 1954.

5. The adverse decisions against these plaintiffs were issued on the following dates: Against Shiels January 3, 1955; against Vernon December 29, 1954; against Swafford January 3, 1955; against Clark December 29, 1954.

1 of this agreement shall be satisfied if any employee shall hold or acquire membership in any one of the labor organizations, other than the Brotherhood, national in scope, organized in accordance with the Railway Labor Act and admitting to membership employees of a craft or class in engine, train, yard or hostling service, that is, in any of the services or capacities covered in Section 3, First, (h), of the Railway Labor Act, defining the jurisdictional scope of the First Division of the National Railroad Adjustment Board. Provided, however, that nothing contained in this agreement shall prevent any employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of the services above specified."

The quoted language of the agreement follows very closely the language of subparagraph (c) of Section 2, Eleventh of the Railway Labor Act (45 U.S.C.A. § 152, Eleventh (c)). Pertinently, that subparagraph reads:

"The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter * * *."

■ The agreement and the statute present one and the same question, namely, whether UROC was a labor organization "national in scope" at the pertinent time. Subparagraph (c) of the union shop amendment itself directly confers the right to satisfy the requirement of membership, by dictating that the requirements of membership "shall be satisfied" in specified circumstances, i. e., if such employees "hold or acquire" membership in any qualified labor organization "national in scope," etc. Subparagraph (c) did not command that the

dependent union shop agreements expressly incorporate the federal right so created. The fact that this particular agreement did express the same right as a contractual right, in Section 2, does not operate to confer pre-emptive jurisdiction of this controversy upon the NRAB. This was the announced view of the Hammond Division of this Court in a remarkably similar case, McNamar v. Baltimore & Ohio Chicago Terminal Co., D.C.1957, 153 F.Supp. 835. There in overruling the railroad defendant's contention that the NRAB possessed exclusive primary jurisdiction, the court (Swygert, J.) said:

"The suit also involves an interpretation of the statute. The incorporation of the pertinent parts of the Railway Labor Act into the agreement makes it no less so. The *ratio decidendi* by which the Supreme Court sustained the courts' jurisdiction in Moore v. Illinois Central Railroad Company, 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, and in Steele v. Louisville & Nashville Railroad Company, 1944, 323 U. S. 192, 65 S.Ct. 226, 89 L.Ed. 173, are applicable and must be applied here. See: Rose, 'The Railway Labor Act and the Jurisdiction of the Courts', 8 Lab.L.J. 9 (1957)." [153 F.Supp. 837.]

Accordingly, the defendant's motion to dismiss for want of jurisdiction is overruled.

Even though plaintiffs in this action are not now claiming under any alleged membership in the UROC, it is of interest to note that since the filing of their complaint the Supreme Court has put to rest any claim they might have had at one time on the basis of membership in the UROC as a labor organization "national in scope." In the case of Pennsylvania R. Co. v. Rychilk, 1957, 352 U. S. 480, 77 S.Ct. 421, 429, 1 L.Ed.2d 480 the Supreme Court held:

"In other words, by writing into § 2, Eleventh (c), standards identical to those of Section 3, Congress in Section 2 was evidently making ref-

erence to those unions which had qualified as electors under Section 3 through the administrative procedure there expressly provided. * * * In short, Congress in Section 2 was referring to a group of unions already defined and constituted under the Section 3 procedures. And therefore an employee has available to him alternative membership only in such unions as have already qualified as electors under Section 3."

UROC has never qualified as an elector for the labor members of the NRAB under Section 3, First (f) of the Railway Labor Act.

Two of the plaintiffs have a separate basis for their contention that the B&O cannot justify their "discharges" under the provisions of the union shop agreement. Plaintiff Shiels joined the Brotherhood of Locomotive Engineers (BLE) about December 1, 1954, and plaintiff Swafford joined the BLE about November 1, 1954.[6] Since the BLE is admittedly a labor organization "national in scope" the question is whether the subsequently acquired membership cancels earlier membership defaults of approximately 28 and 16 months respectively. This contention also depends upon the meaning of subparagraph (c) of the union shop amendment.

■■ As the Supreme Court said in the Rychilk case of this very statute, it must be read "not in a vacuum, but in the light of the policies this Section was intended to serve, * * *" (352 U.S. 480, 77 S.Ct. 425, 1 L.Ed. 486). The discussion there of the policies shows abundantly that the right to "acquire" alternative membership in the future was not intended to operate as a cure for accrued defaults in required membership. It is this court's view that the tardy acquisition of BLE membership by these two plaintiffs did not immunize them from the penalties prescribed by the agree-

ment. In the Rychilk case below (Rychilk v. Brotherhood of Railroad Trainmen, D.C.1955, 128 F.Supp. 449), the District Court denying an almost identical contention said:

"It would appear that the Act, however, contemplates the *continued* membership in a Union national in scope." (at page 456). (Italics added.)

See also Alabaugh v. Baltimore & Ohio R. Co., 125 F.Supp. 401, at page 410, affirmed 4 Cir., 1955, 222 F.2d 861, certiorari denied, 1955, 350 U.S. 839, 76 S. Ct. 77, 100 L.Ed. 748.

This precise point was before the Hammond Division in the McNamar case, supra. There the court analyzed the problem saying:

"It is undisputed that plaintiff acquired membership in a qualified labor organization other than the BRT; however, that occurrence, i. e., his becoming a member in SUNA, took place on July 1, 1953, sixteen months after he quit his membership in the BRT on March 1, 1952. Section 1 of the Union Shop Agreement provides ' * * * as a condition of their [employees'] continued employment * * * [they shall] become members of the Brotherhood within sixty (60) calendar days of the date they first perform compensated service as such employees after the effective date of this agreement, and thereafter shall maintain membership in the Brotherhood.' The agreement further provides that ' * * * nothing contained in this agreement shall prevent any employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of the services above [therein] specified' this of course, and the agreement so specifies, is further limited to any one of the

---

6. In both cases B&O's decision holding them in violation of the agreement and ordering termination of their employment was rendered January 3, 1955—subsequent delay in effecting the terminations is attributable to themselves.

other organizations qualified under the Act to afford alternative membership."

and the court held as follows:

"This termination of membership in the BRT and failure to acquire alternative membership in another qualified labor organization on the part of the plaintiff constituted a breach by him of the Union Shop Agreement. It was a breach of a provision of the agreement which is specifically sanctioned by the Railway Labor Act. Plaintiff's breach permitted the BRT to exercise its rights under the terms of the Union Shop Agreement, i. e., to notify the carrier of his failure to comply with the terms of the agreement and to insist that he was no longer entitled to continue in employment.

\* \* \* \* \* \*

"The agreement further provides that, 'The receipt by the carrier of a request for a hearing shall operate to stay action on the termination of employment until the hearing is held and the decision of the carrier is rendered.' The fact that the plaintiff acquired membership in SUNA before his appeal was heard and decided did not affect the right *and* duty of the BOCT to discharge the plaintiff for non-performance of a term of the contract. Such tardy acquisition of membership in a qualified labor organization could not have a retroactive effect. If it were otherwise, the requirement in the contract of continuous membership in one or another qualified union would be meaningless and rendered a nullity."

There remains a third and principal ground relied upon by all four plaintiffs in support of their contention that B & O cannot justify the termination of their employment as an act required by the union shop agreement. They allege[7] that they applied for re-admission as members of the BLF & E prior to the time of their actual discharge, and that the BLF & E rejected their applications discriminatorily, having previously re-admitted others, at least five, who were identically situated. This ground is based upon a different provision of both the Union Shop Amendment and the agreement. Subparagraph (a) of the Union Shop Amendment authorizes union shop agreements requiring as a condition of continued employment that employees working in the represented craft become members of the representative organization within sixty days.

Railway Labor Act, Section 2 (45 U.S. C.A. § 152, Eleventh, subparagraph (a)). Subparagraph (a) has the following proviso:

"*Provided,* That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

Plainly this is not a self-executing command; it simply specifies conditions which must be fulfilled by dependent union shop agreements. In the case of United States v. Ansonia Brass, etc. Co., 1910, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107, the Supreme Court held that pro-

7. Plaintiff Shiels alleges that he sought to rejoin the BLF&E on December 13, 1952 after approximately five months' default in membership. Plaintiff Swafford, who dropped his membership in the BLF & E on July 1, 1953, simply alleges that he applied for reinstatement in the BLF&E "in 1954." Two of the plaintiffs are uncertain whether they applied for re-admission into the BLF & E and were rejected or whether, having learned that an application would be fruitless, they neglected to make such an application. These are plaintiffs Clark and Vernon. The court will assume, for present purposes, that their factual situation was comparable to that of plaintiffs Shiels and Swafford.

visions inserted in contracts by command of a federal statute did not create a federal right.

The union shop agreement before the court fulfills the requirements of the proviso of subparagraph (a) quoted above. Section 4 of the union shop agreement provides:

> "Sec. 4. Nothing in this agreement shall require an employee to become or to remain a member of the Brotherhood *if such membership is not available to such employee upon the same terms and conditions as are generally applicable to other members,* or if the membership of such employee is denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership. For purposes of this Section, dues, fees, and assessments, shall be deemed to be 'uniformly required' if they are required of other employees in the same status at the same time." (Italics supplied to indicate language most pertinent to plaintiffs' contention.)

The plaintiffs do not raise any question concerning the validity of the union shop agreement in this or other respects and, indeed, admit that Section 4 carries out the "identical intent" of the statutory provision. (Complaint, paragraph 8.)[8]

█ That Section is not controlling in the circumstances of this case. There is no question here of any of the plaintiffs *becoming* a member; all of the plaintiffs except Swafford *were* members of the BLF & E within the grace period of sixty days following the effective date of the union shop agreement. Swafford, the fourth plaintiff, was accepted into membership even though he had delayed his original application for more than six months following his initial employment. There is no question in this case of any denial of the right "to remain a member." These plaintiffs abandoned their membership (Complaint, paragraph 15).

In the McNamar case, as in this case, a plaintiff placed special reliance upon the fact that his application for re-admission into the bargaining representative labor organization was made prior to the date of the union shop appeals hearing. Here plaintiff Shiels made his application for re-admission well in advance of the date of such appeals hearing though after some five months of accrued default in membership. Plaintiff Swafford simply alleges that he made application "in 1954." The appeals hearing in his case was held December 15, 1954. The Hammond Division, disposing of this same contention, held:

> "An additional charge is made in plaintiff's affidavit to the effect that he is the victim of a discrimination, since others less active than he in UROC were reinstated as employees even though they were guilty of a similar breach whereas he was discharged. But these charges, even if proved, could avail the plaintiff nothing. Once it becomes apparent that the plaintiff initially, voluntarily and deliberately breached the Union Shop Agreement, the motives which prompted the defendants to act within their contractual and statutory rights are immaterial. Whether these motives were 'good' or 'bad', whether they were of an inimical, vindictive or discriminatory nature directed toward the plaintiff or were partially or wholly selfish are of no materiality once it is established that the respective rights to discharge him on the part of the BOCT and to demand his discharge on the part of the BRT came into existence by

8. Had this complaint depended solely upon the discrimination point, which is itself dependent principally upon Section 4 of the union shop agreement, the doctrine of Steele v. Louisville & N. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, would be inapplicable and further consideration of NRAB pre-emptive jurisdiction would have been necessary.

reason of the plaintiff's breach of the agreement, provided, of course, such breach was in no way induced or waived by the defendants."

All of the facts recited above are established by the pleadings, affidavits and admissions of the parties.[9] The contentions of plaintiffs constituting the basis of their complaint presented in memorandum and in argument on defendant's motion for summary judgment have been considered. Consistent with the holding of the Hammond Division in the McNamar case, this court holds that defendant B & O had both a right and a duty under the union shop agreement to terminate plaintiffs' employments, and gives summary judgment for defendant.

In so deciding the court has rejected the following contention of plaintiffs which appears on page 4 of their memorandum:

"In any case, the discharge was unlawful since application for membership was made before the discharge and membership was denied because of membership in the UR OC, and not because the application was defective or improper."

Firstly that contention relies upon decisions arising out of Section 8(a) (3) of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 158(a) (3) upon the view that its language "is nearly identical with that in Sec. 152, 11th(a) of the Railway Labor Act." The court finds marked differences in the language of the pertinent provisos of the two statutes. Secondly the decisions under Section 8(a) (3) do not support plaintiffs' contention. In Union Starch & Refining Co. v. N. L. R. B., 7 Cir., 1951, 186 F.2d 1008, 27 A.L.R.2d 629, the discharged employees had tendered their dues and initiation fees within the initial 30-day grace period. That tender was rejected simply because those employees refused to take an oath of allegiance to the union. That decision is clearly inapplicable here. Nor does the decision in Radio

Officers v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455, apply here. The closest of the three cases covered by that opinion to this case was the case of National Labor Relations Board v. International Brotherhood of Teamsters, 8 Cir., 196 F.2d 1. On the facts the decision is inapplicable. The union there caused the employer to deny seniority rights to a union member who was delinquent in the payment of dues. The Board found that the union security provisions of the agreement were ineffective due to lack of required authorization. (94 N.L.R.B. 1494.) The Court of Appeals refused enforcement and the Supreme Court reversed, ordering enforcement. It observed 347 U.S. at page 42, 74 S.Ct. at page 336:

"The union's action was not sanctioned by a valid union security contract, and, in any event, the union did not choose to terminate Boston's membership for his delinquency."

Likewise the decision in National Labor Relations Board v. Aluminum Workers International Union, 7 Cir., 1956, 230 F.2d 515, is inapplicable. There prior to "the operative demand for her discharge" (at page 520) she had tendered every cent of dues demanded. The Board also condemning the discharge had observed that "proper tender of dues was made prior to Respondent Union's request for discharge * * *" (111 N.L.R.B. 411).

A board decision directly in point under that Act is Chisholm Ryder Company, Inc. and John Cavicchio, 94 N.L.R.B. 508. There the question of timeliness is the principal subject of consideration. At page 510 the Board held:

"In the circumstances to hold, as the General Counsel urges that proviso (B) to Section 8(a) (3) and Section (b) (2) permit employee-members subject to a valid union-shop agreement to disregard with impunity the union's uniform requirements respecting the time for

9. Allegations concerning BLF&E's discrimination and plaintiffs' own application

tions for re-admission into BLF&E membership are accepted for present purposes.

payment of 'periodic' dues as a condition of retaining membership would be a distortion of the manifest sense of these sections. Moreover such an interpretation would materially detract from the substance of union-security agreements which Congress vouchsafed to unions and would leave individual employees free to ignore an important condition of membership which unions are permitted to impose. In the absence of a clear expression of Congressional intent to that effect, we are not persuaded that such a construction is warranted."

■■ There is a further contention properly raised by defendant B & O as a ground of its motion for summary judgment.[10] B & O contends that, whether or not the union shop agreement gives rise to a valid justification for the discharges, the plaintiffs do not establish a valid cause of action for damages for wrongful discharge. The gist of it is that plaintiffs possessed no right to any definite term of employment, nor to any permanent or life-time employment at the time of their discharges. It is well settled that "collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract beyond its life * * *." Elder v. New York Central R. Co., 6 Cir., 152 F. 2d 361, at page 364. See also System Federation No. 59, etc. v. Louisiana & A. R. Co., 5 Cir., 119 F.2d 509, 515; and McMullans v. Kansas, Oklahoma & Gulf Ry. Co., 10 Cir., 1956, 229 F.2d 50. Seniority among railroad employees is contractual and does not arise from mere employment. Colbert v. Brotherhood of R. R. Trainmen, 9 Cir., 206 F.2d 9, certiorari denied, 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422.

Prior to the Union Shop Amendment, at least, it was settled that the Railway Labor Act itself does not create any term of permanent employment. Beeler v.

Chicago, R. I. & Pac. Ry. Co., 10 Cir., 1948, 169 F.2d 557, at page 560 citing Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, and Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

Defendant B & O's point is succinctly stated in 31 Am.Jur., "Labor," Section 24, at page 846 as follows:

"But there is no liability to a member of a union not employed for a definite period who is discharged upon expulsion from the union pursuant to a contract between the union and the employer that only union men would be employed."

The rule quoted from American Jurisprudence is consistent with a large number of decisions which hold that an employer has a *right* to terminate such employment contracts "whatever be his reason, good, bad, or indifferent." Union Labor Hosp. Ass'n v. Vance Redwood Lumber Co., 158 Cal. 551, 112 P. 886, 888, 45 L.R.A.,N.S., 1034, at page 1039. Harper v. Southern Coal & Coke Co., 5 Cir., 1934, 73 F.2d 792 at page 793. In Odell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123, at page 128, the rule was stated as follows:

"It is the universally recognized rule that in the absence of a contract or statutory provisions an employer may discharge an employee without cause or reason or for any cause or reason." (With a wealth of federal authority.)

The only rule of the collectively bargained "schedule" having any bearing whatever upon plaintiffs' alleged right to continued employment is the discipline rule, pages 39 and 40 of the schedule, being "Rule 14." The last paragraph of paragraph "(d)" of that rule was amended, effective June 1, 1947, to read as follows:

"If it is found the fireman or hostler has been unjustly suspended or

---

10. The same ground appears in defendant's motion to dismiss for failure to state a claim upon which relief can be granted—as it relies upon additional material—ters properly probated, it will be considered under Fed.Rules Civ.Proc. rule 12(b) (6), 28 U.S.C.

dismissed from the service, such fireman or hostler shall be reinstated with his seniority rights unimpaired and compensated for the wage loss, if any, resulting from such suspension or dismissal, provided, however, that any earnings made in other employment during time out of service shall be deducted from such wage loss. For the purposes of this rule self-employment will not be considered as other employment." (See Supplemental Rules Agreement, page 2, item 10, and appendix "I" on page 55.)

■ There is no doubt that this is the only applicable rule limiting the defendant's common law right to hire and fire employees of this craft. Defendant B & O argues that the quoted rule does more than limit the amount of possible damages to the amount of "the wage loss" up to the time when "it is found that the fireman or hostler has been suspended or dismissed." That it does no less is evident, but that it requires a discharged man to persevere in his effort to be reinstated does not follow. That these plaintiffs desired to continue to work with their seniority rights unimpaired is obvious. It is equally apparent that if they had brought this action for reinstatement they would have lost their right derived under the decision in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, to proceed in court, and that the prayer for reinstatement would oust the court of its jurisdiction on account of supervening NRAB jurisdiction. Walters v. Chicago & N. W. Ry. Co., 7 Cir., 216 F.2d 332. The court recognizes that one who seeks rights under a contract must accept its obligations, U. S. Steel Corp. v. Nichols, 6 Cir., 1956, 229 F.2d 396, and that a person who relies upon a contract for recovery cannot disavow its terms, Marranzano v. Riggs Nat. Bank, 1954, 94 U.S.App.D.C. 182, 213 F.2d 196; however, that doctrine is inapplicable. Here the rule of the collectively bargained "schedule" provides for reinstatement *and* compensation for the wages lost, if any.

That does not mean that these discharged plaintiffs have any contractual basis for claiming lost wages as damages beyond the date of a potential judgment finding that they have been "unjustly suspended or dismissed from the service" of defendant B & O. They could have sought both reinstatement and lost wages if they had elected to pursue their remedy before the NRAB. The election they made, however, operates to limit the amount of their potential damages. They have already been out of B & O's service for some 16 months so that the court is satisfied that the amount which can be claimed in good faith under 28 U.S.C. § 1332 exceeds $3,000. Brown v. United Gas Public Service Co., 5 Cir., 96 F.2d 264.

■ The court is not persuaded that Congress intended in the Union Shop Amendment to impose any separate and unique responsibility, such as damages for deprivation of permanent employment, in cases of terminations under, but not justified by, a union shop agreement. Nevertheless, for reasons stated in earlier paragraphs, defendant B & O's motions for summary judgment, so far as they depend upon this ground (alleged employment at will) are overruled.

■ Defendant B & O's motion to dismiss for want of an indispensable party is overruled. While the BLF & E, the supposed indispensable party, is the other contracting party to the union shop agreement, the plaintiffs do not seek to void that agreement. On the contrary, they admit both the agreement's validity and applicability. Furthermore, they do not seek reinstatement as employees of the B & O, nor are they asserting any claim for damages against that union which has denied them membership. A different finding upon the point might deprive the plaintiffs of their claimed remedy. A court will properly strain to avoid such a result. Zwack v. Kraus Bros. & Co., 2 Cir., 237 F.2d 255, at page 259. Reaching the above conclusions dis-

poses of the entire law suit and it becomes unnecessary to rule on other points which have been raised.

The foregoing constitute the court's findings of fact and conclusions of law consonant with F.R.C.P. 52. Lindsey v. Leavy, 9 Cir., 149 F.2d 899.

### Order

It appearing from the pleadings and affidavits on file that there is no genuine issue as to any material fact and that the defendant, The Baltimore and Ohio Railroad Company, is entitled to a judgment as a matter of law, the motion of the defendant, The Baltimore and Ohio Railroad Company, for summary judgment is granted.

### Judgment

It is therefore ordered, adjudged and decreed that the plaintiffs take nothing from the defendant. Judgment for the defendant. Costs against the plaintiffs.