[S. F. No. 5299.   Department Two.—November 17, 1910.]

## UNION LABOR HOSPITAL ASSOCIATION (a Corporation), Respondent, v. VANCE REDWOOD LUMBER COMPANY (a Corporation), et al., Appellants.

INJUNCTION—AGREEMENT BETWEEN EMPLOYERS FOR HOSPITAL DUES FROM EMPLOYEES—FEES PAYABLE TO SELECTED HOSPITAL—MONOPOLY.—An agreement between seven companies, all of which were engaged in lumbering and milling in the same county, whereby, for their own protection and for the betterment of the condition of their employees, they required of them, as a condition of obtaining employment or of remaining in employment, that they should assent to a deduction of a specified amount from their monthly wages, to be given to a hospital of the employee's own selection taken from a list of four presented, but which did not prohibit the employees from patronizing any other hospital, is not unlawful, and will not be enjoined at the instance of a hospital which was not included among those on the list. There was no element of monopoly in such agreement.

ID.—EVIL MOTIVE DOES NOT RENDER LAWFUL ACT ILLEGAL.—If the purpose of the defendants in entering into such agreement were to injure the business of the plaintiff, unless they adopted illegal means to that end, their conduct did not render them amenable to the law, for an evil motive which may inspire the doing of an act not unlawful will not of itself make the act unlawful.

ID.—COMPLIANCE WITH HOSPITAL REGULATION MATTER OF CONTRACT.—The refusal of the companies to employ or to retain in their employ any one unwilling to comply with their hospital regulation was purely a matter between employer and employee.

ID.—RIGHT OF EMPLOYER TO IMPOSE CONDITIONS ON EMPLOYMENT.—In the absence of a contract between them to the contrary, it is the unquestioned right of an employee to leave the employment at his pleasure, and it is equally the right of the employer to discharge at his pleasure, or to impose conditions upon the retention of the employee in his employment.

APPEAL from a judgment of the Superior Court of Humboldt County.   George W. Hunter, Judge.

The facts are stated in the opinion of the court.

Denver Sevier, C. M. Wheeler, F. A. Cutler, and F. R. Sweasey, for Appellants.

J. F. Quinn, and Coonan & Kehoe, for Respondent.

HENSHAW, J.—This action was brought by plaintiff against the named defendant and six other lumber companies, to obtain an injunction restraining and enjoining them from conspiring and combining together to vex, annoy, hinder, injure, and destroy the hospital business of plaintiff. The scheme of annoyance and destruction consisted in this: The defendants compelled every employee to consent to the deduction of one dollar from his monthly wage, twelve and one-half cents of which went into a contingent fund to help needy employees who might be injured and eighty-seven and a half cents of which went to a hospital for an employee's ticket. This ticket entitled the employee to medical and surgical care and attendance in case of injury. The hospital could be selected by the employee from a list of three or four presented to him, but the Union Labor Hospital was not mentioned and was not on the list. These facts form the foundation of the charge of malicious and willful conspiracy, combination, and boycott designed to vex, annoy, hinder, injure, and destroy the plaintiff's business, and coerce and intimidate its patrons and customers, to ruin its credit, and to prevent it from selling its bonds, etc. There was no issue over the question of what these defendants were doing. The court found, generally, in favor of the allegations of the complaint, found that the defendant companies derived a benefit from the existing hospital arrangement and the fund created by the twelve and a half cents taken out of the monthly hospital dues of each employee, since thus they were relieved of the burden of caring for indigent and injured employees. The court also found that the relations existing between the defendants and the agents of plaintiff were of such a nature that the defendants were justified in not entering into an agreement with the Union Labor

Hospital, such as existed between the defendants and the other hospitals upon their list. And the court also found that the defendants, in entering into the agreement with the other hospitals, were acting solely for the purpose and with the intent to subserve their own (defendants') interests.

The defendants were all companies engaged in lumbering and milling in Humboldt County. The occupations of their men were dangerous. That provision should be made for the medical and surgical care of the men injured was most proper. No objection is made to this, nor to the means adopted to effectuate it, saving that plaintiff contends that because its hospital was not upon the list and because the employees were compelled to take out hospital tickets in one or another of the enumerated hospitals, a species of unlawful discrimination by the defendants against the plaintiff was thus established, a discrimination which it is urged and which the court found was an illegal boycott, against the continuance of which defendants were enjoined.

It is important to understand exactly what these defendants were doing. Essentially it was this: By agreement amongst themselves they selected a list of hospitals, of which plaintiff's was not one. By agreement amongst themselves, for their own protection and for the betterment of the condition of their men, they required of the men, as a condition of obtaining employment, or as a condition of remaining in employment, that they should assent to a deduction from their monthly wages of eighty-seven and a half cents, which should be given to a hospital of the employee's own selection taken from the list presented. These defendants did not go so far as to discharge or even to threaten to discharge an employee who might buy a ticket entitling him to the service of the plaintiff's hospital. They insisted merely that he buy a ticket in one of their designated hospitals. An employee was at liberty to buy an additional ticket in plaintiff's hospital, but, in the nature of things, an employee having purchased a ticket in another hospital, would not be likely to lay out any more money for such a purpose.

There being no contractual relations between plaintiff and defendants, the defendants, individually or in combination, were under a duty only to refrain from inflicting a legal wrong upon plaintiff. The finding of the court is that defendants in

making their agreements with the Sequoia, St. Francis, Marine View, and Trinity hospitals were acting solely for the purpose and with the intent to subserve their own interests. But if this were not so, and their purpose were to injure the business of plaintiff, nevertheless, unless they adopted illegal means to that end, their conduct did not render them amenable to the law, for an evil motive which may inspire the doing of an act not unlawful will not of itself make the act unlawful. (*Parkinson* v. *Building Trades Council*, 154 Cal. 581, [98 Pac. 1027]; *Pierce* v. *Stablemen's Union*, 156 Cal. 70, [103 Pac. 324].) Unquestionably there was nothing illegal in the measures employed to accomplish this result. The suasion or intimidation or coercion was purely moral, and went no further upon the part of the defendants than a refusal to employ or to retain in their employ any one unwilling to comply with their hospital regulation. This was strictly a matter between employer and employee, and where no contract between them stands in the way, it is the unquestioned right of the employee to leave the employment at his pleasure, and it is equally the right of the employer to discharge at his pleasure, or to impose conditions upon the retention of the employee in his employment. If imposed conditions are regarded as unjust, unfair or onerous, the employee need not comply with them, but may resign, and, as has been said in the cases above cited, he may do this as an individual, or he may do so by concerted action as a member of an organized body or trades union. Precisely as may the employee cease labor at his whim or pleasure, and, whatever be his reason, good, bad, or indifferent, leave no one a legal right to complain; so, upon the other hand, may the employer discharge, and, whatever be his reason, good, bad, or indifferent, no one has suffered a legal wrong. A man may have a profitable general merchandise business in the neighborhood of a mill or factory depending for its patronage upon the mill or factory hands. For reasons sufficient to them they may cease dealing at this store by concert of action, and so long as their methods (not their motives) are legal, they may perfect a boycott which will destroy the storekeeper's business. Upon the other hand, the mill owner, being under no contractual obligation to the storekeeper, may indisputably shut down his mill at any time, and thus work a destruction of the storekeeper's business. It is conceivable that his motive may be so

venomous that he shuts down his works merely to destroy the
storekeeper's business and yet the storekeeper has no right of
action, nor indeed has he right of inquiry into the motive
which prompted the act.    Since the mill owner may do this,
he may do less than this, and exact of his employees, as a con-
dition of their continued employment, that they do not deal
at that store, and for this, also, however grave the injury, the
storekeeper will have no legal cause of complaint.    These
views touching the arbitrary right of the employee to labor
or to refuse to labor, and the reciprocal arbitrary right of the
employer to employ or discharge labor, without regard in
either case to the actuating motives, are propositions settled
beyond peradventure.    "It is well settled," observes Chief
Justice Shaw, in *Commonwealth* v. *Hunt,* 4 Metc. (Mass.) 133,
[38 Am. Dec. 346], "that every man, whether skilled laborer,
mechanic, farmer or domestic servant, may work or not work,
work or refuse to work, with any company or individual at his
own option, except so far as he is bound by contract.    In
*Payne* v. *Western etc. Railroad Co.,* 81 Tenn. 507, [49 Am.
Rep. 666], it is said: "Railroad corporations have in this mat-
ter the same right enjoyed by manufacturers, merchants,
lawyers and farmers.    All may dismiss their employees at
will, be they many or few, for good cause, for no cause, or
even for cause morally wrong, without being thereby guilty of
legal wrong.    *A fortiori* they may threaten to discharge them
without thereby doing an illegal act."    The question will be
found very elaborately discussed in *Heywood* v. *Tillson,* 75
Me. 225, [46 Am. Rep. 373], and in the more recent case of
*Banks* v. *Eastern Ry. & Lumber Co.,* 46 Wash. 610, [90 Pac.
1048], a case very similar to the one at bar.    Banks charged
that he was conducting a public hospital, that the defendant
was a corporation engaged in the manufacture of lumber and
shingles, employing a large number of men; that fifty cents a
month were retained from the wages of each man, to be dis-
bursed for hospital and medical services; that fifty-six em-
ployees of the defendant selected plaintiff's hospital and served
upon defendant a written demand that their hospital dues be
thereafter paid to the plaintiff; that plaintiff, in consideration,
issued to each of the employees a certificate entitling him to
medical and surgical treatment in the hospital, and that de-
fendant refused to pay the fees to plaintiff so demanded by

the written request of its employees; but, to the contrary, notified its employees that all hospital dues would be paid to the Dumon Hospital, and that any employee not consenting to such demand would be discharged. It was alleged that all the acts of the defendant were wanton, willful, and malicious, and done with intent to harass plaintiff and injure his business. A demurrer to the complaint was sustained. In upholding the ruling of the trial court the supreme court of Washington said: "The respondent was entitled to employ its servants upon the conditions alleged. It had a perfect right to contract for the retention of reasonable hospital fees and reserve to itself the privilege of selecting the physician to whom such fees should be paid. The contract, which did not profit the respondent, was made for the direct benefit of its employees. Appellant made no agreement with the respondent. There was no privity of contract between him and respondent. The contract between the respondent and the employee was not made for the benefit of appellant and he had no right of action thereon. If appellant made any contract which has been violated, it was with the fifty-six employees to whom he issued hospital certificates. He cannot dictate the manner in which the respondent shall conduct its business, nor can he, by any agreement with respondent's employees, to which respondent is not a party, compel it to change the terms of its contracts of employment. Appellant places much reliance on the allegations of malice, but if the respondent is conducting its business in a lawful manner, making and performing valid contracts with its employees, the mere incident of a malicious motive toward the appellant does not of itself warrant a recovery. Appellant contends this is an action in tort, based on the malicious and wanton acts of the respondent, and seems to predicate his right to recovery upon respondent's wrongful motive. Judge Cooley, at page 1505 (*832) of vol. 2, third edition, of his work on Torts, says: 'Bad motive, by itself, then is no tort. Malicious motives, make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent. Where one exercises a legal right only, the motive which actuates him is immaterial. When in legal pleadings the defendant is charged with having wrongfully and unlawfully done the act com-

plained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged.' In substance, the act of respondent of which appellant complains is that it has maliciously caused its employees to violate their contract with him; but the acts herein alleged give the appellant no cause of action as against respondent. (*Boyson* v. *Thorn,* 98 Cal. 578, [21 L. R. A. 233, 33 Pac. 492].)"

We are unable to perceive where any element of monopoly enters into this consideration, as respondent contends. Defendants had the undoubted right to deal with any hospital which they might select. In fact they are dealing with four, and they are not even prohibiting their men from engaging the services of plaintiff. We repeat, that since the acts of defendants are within their legal rights, the motive for those acts is not a subject of inquiry. "To entitle a plaintiff to recover, there must be a wrong done. 'No one is a wrongdoer but he who does what the law does not allow.' He who does what the law allows cannot be a wrongdoer whatever his motive. 'So no one is guilty of a fraud, because he exerts his rights.' The motive which may induce such exertion is immaterial." (*Heywood* v. *Tillson,* 75 Me. 237, [46 Am. Rep. 373].)

The judgment is reversed and the cause remanded.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank, the following opinion was filed by Beatty, C. J., on December 20, 1910:—

BEATTY, C. J.—In response to the petition for a rehearing of this cause I desire to say that, while concurring in the judgment of reversal, I find some expressions in the opinion of Justice Henshaw which I deem unnecessary to the conclusion of the court, and which, if not absolutely inconsistent with my views, as expressed in the case of *Parkinson* v. *Building Trades Council,* 154 Cal. 581, [98 Pac. 1027], are yet in apparent conflict with what I deem to be the true doctrine applicable in cases of this character. I take no exception to the proposition that an act in its essence lawful does not become actionable

because inspired by a bad motive. But I am convinced that the weight of reason and authority is in favor of the view that the motive of a harmful act is material where the act is not absolutely and unqualifiedly lawful in itself. This is illustrated by cases of malicious prosecution, unlawful imprisonment, and libel, in which the pleas of probable cause and privilege are defeated by proof of actual malice, and the doctrine of those cases rests upon a principle which makes it fully applicable to a case wherein it is made to appear that the ruin or injury of a legitimate business (by which I mean any useful vocation open to every citizen as of common right) is the direct result of a combination formed for the primary purpose of injuring that business, and this notwithstanding such injury may involve some incidental advantage to those who have caused it. This, which appears to be the necessary complement or counterpart of the proposition that injury incidentally resulting to a business from a combination entered into for the benefit by lawful means of those who engage in it, is not actionable, is supported not only by reason but by authority. Besides the case of *Quinn* v. *Leatham* referred to and commented upon in the Parkinson case, I would call attention to the opinion of the circuit court of appeals in *National Fireproofing Co.* v. *Mason Builders' Association,* 169 Fed. 259, from which I quote the following statement of the doctrine for which I am contending.

"The direct object or purpose of a combination furnishes the primary test of its legality. It is not every injury inflicted upon third persons in its operation that renders the combination unlawful. It is not enough to establish illegality in an agreement between certain persons, to show that it works harm to others. An agreement entered into for the primary purpose of promoting the interest of the parties is not rendered illegal by the fact that it may incidentally injure third persons. Conversely, an agreement entered into for the primary purpose of injuring another is not rendered legal by the fact that it may incidentally benefit the parties. As a general rule it may be stated that, when the chief object of a combination is to injure or oppress third persons, it is a conspiracy; but that when such injury or oppression is merely incidental to the carrying out of a lawful purpose, it is not a conspiracy. Stated in another way: A combination entered

into for the real malicious purpose of injuring a third person in his business or property may amount to a conspiracy and furnish a ground of action for the damages sustained, or call for an injunction, even though formed for the ostensible purpose of benefiting its members and actually operating to some extent to their advantage; but a combination without such ulterior oppressive object, entered into merely for the purpose of promoting by lawful means the common interests of its members, is not a conspiracy."

This doctrine, however, cannot avail the respondent here as the case is presented by the record, for although it is found by the trial judge that the defendants without any interests of their own to subserve, or any lawful object to promote did conspire and confederate together for the purpose of unlawfully injuring the plaintiff in the manner alleged in the complaint, it is also found, as shown in the opinion of the court, that the agreement with the four favored hospitals was entered into by the defendants *solely for the purpose and with the intent to subserve their own interests.* These two findings appear to me to stand in absolute and irreconcilable opposition to each other and the result is no finding at all upon a point essential to the validity of the judgment, which must therefore be reversed.