[Civ. No. 23713. Second Dist., Div. Two. Sept. 30, 1959.]

PETER E. PETERMANN, Appellant, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 396 et al., Respondents.

*Assigned by Chairman of Judicial Council.

Findlay A. Carter for Appellant.

Stevenson, Hackler & Ansel and John C. Stevenson for Respondents.

FOX, P. J.—Plaintiff appeals from a judgment entered in favor of defendants after their motions for judgment on the pleadings were granted.

The complaint in this case consists of two causes of action. The first cause of action seeks declaratory relief adjudging that plaintiff was wrongfully discharged by the defendants (his employer) and seeks accrued salary since his discharge. Plaintiff, in effect, alleges that he was employed by the defendant union[1] as a business agent. The defendant Matula, acting for the union as its secretary-treasurer, did the actual hiring and specified the duration to be as long as plaintiff's work was satisfactory. Thereafter, plaintiff was subpoenaed to testify before the Assembly Interim Committee on Governmental Efficiency and Economy of the California Legislature. Plaintiff alleges that Matula instructed him to make certain false and untrue statements in the testimony he was to give before the above committee. Plaintiff, however, gave correct and truthful answers to all questions asked of him. The following day he was discharged by Matula. Plaintiff assigns as the reason for his discharge his failure to commit perjury.

The second cause of action pertains to the issuance by the defendant union of an "Honorable Withdrawal Card" to plaintiff. It is plaintiff's contention that the issuance of the withdrawal card was arbitrary and done with the intent to further injure him.

Defendants' demurrer to plaintiff's second amended complaint was overruled and their motion to strike denied. Thereafter, at the time of trial, defendants made a motion which was granted, after argument, for a judgment on the pleadings. Plaintiff appeals.

██ On an appeal from a judgment for defendants on the pleadings, "the case is reviewed . . . the same as would be a judgment of dismissal entered following the sustaining of a general demurrer, and the allegations in plaintiff's complaint must be taken as true, and so taken the question is whether a cause of action has been stated. (Citations.)" (*Gill* v. *Curtis Publishing Co.*, 38 Cal.2d 273, 275 [239 P.2d 630].) ██ The sufficiency of the complaint is to be determined upon the same principles as though it had been attacked by a general demurrer. (*Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 151 [157 P.2d 1].)

---

[1]Local 396 is hereinafter referred to as "the union."

An examination of plaintiff's first cause of action discloses that he is predicating his right to redress upon an employment contract which does not contain any fixed period of duration. ■ Generally, such a relationship is terminable at the will of either party (Lab. Code, § 2922) for any reason whatsoever. (*Union Labor Hospital Assn.* v. *Vance Redwood Lbr. Co.,* 158 Cal. 551, 554 [112 P. 886, 33 L.R.A.N.S. 1034]; *DeGonia* v. *Building Material etc. Union,* 155 Cal. App.2d 573, 583-584 [318 P.2d 486].) ■ However, the right to discharge an employee under such a contract may be limited by statute (see Elec. Code, § 695; *Kouff* v. *Bethlehem-Alameda Shipyard, Inc.,* 90 Cal.App.2d 322 [202 P.2d 1059]) or by considerations of public policy.

■ ''The term 'public policy' is inherently not subject to precise definition. In *Maryland Casualty Co.* v. *Fidelity & Casualty Co.,* 71 Cal.App. 492, the court stated at page 497 [236 P. 210]: 'The question, what is public policy in a given case, is as broad as the question of what is fraud.' Also in *Noble* v. *Palo Alto,* 89 Cal.App. 47, the court said at pages 50-51 [264 P. 529]: 'Public policy is a vague expression, and few cases can arise in which its application may not be disputed. Mr. Story in his work on Contracts (§ 546), says: ''It has never been defined by the courts, but has been left loose and free of definition in the same manner as fraud.'' By ''public policy'' *is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. . . .* ' '' (*Safeway Stores* v. *Retail Clerks etc. Assn.,* 41 Cal.2d 567, 575 [261 P.2d 721].) (Emphasis added.)

In 72 Corpus Juris Secundum, at page 212, it is stated that public policy ''is the principles under which freedom of contract or private dealing is restricted by law for the good of the community. Another statement, sometimes referred to as a definition, is that whatever contravenes good morals or any established interests of society is against public policy.''

■ The commission of perjury is unlawful (Pen. Code, § 118). It is also a crime to solicit the commission of perjury. (Pen. Code, § 653f.) The presence of false testimony in any proceeding tends to interfere with the proper administration of public affairs and the administration of justice. It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a

designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute. The threat of criminal prosecution would, in many cases, be a sufficient deterrent upon both the employer and employee, the former from soliciting and the latter from committing perjury. However, in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury. To hold otherwise would be without reason and contrary to the spirit of the law. The public policy of this state as reflected in the Penal Code sections referred to above would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury. To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and serve to contaminate the honest administration of public affairs. This is patently contrary to the public welfare. The law must encourage and not discourage truthful testimony. The public policy of this state requires that every impediment, however remote to the above objective, must be struck down when encountered.

Furthermore, plaintiff's allegations that the duration of his employment was for such period as his work was satisfactory; that on October 4, 1955 (the day before the legislative committee hearing), he was informed by Matula that "his work was highly satisfactory"; that his discharge on the day following the hearing was for "The purpose of punishing plaintiff for testifying truthfully" and "for not committing perjury as he had been called upon to do," raise an issue as to the good faith of the defendants in discharging plaintiff and lay a foundation, if established, for damages for their action. ■ When one, who has been employed for such time as his services are satisfactory, is discharged it is "well settled that the employer must act in good faith; and where there is evidence tending to show that the discharge was due to reasons other than dissatisfaction with the services the question is one for the jury." (*Coats* v. *General Motors Corp.,* 3 Cal.App.2d 340, 348 [39 P.2d 838], and cases there cited; also 56 C.J.S., § 54b, p. 462.)

■ We are of the opinion, based upon the preceding discussion, that plaintiff alleged sufficient facts to show that his discharge was improper and that he was entitled to civil relief as a consequence thereof.

■ Defendants next argue, however, that plaintiff failed to state a cause of action for he failed to exhaust his remedies within the union before resorting to the courts. Plaintiff was an appointed or hired business representative and was not elected to that position. Furthermore, plaintiff was not an officer of the union. (International Brotherhood of Teamsters, etc., Constitution, art. XXI, § 2.) The union constitution specifically provides in article XXI, section 7, that an appointed or hired business representative is not entitled to a trial before removal. The pertinent provisions of the union constitution regarding appeals or remedies within the union are as follows: (1) "In the event disciplinary action is taken against the accused, he or she may take an appeal . . ." (art. XVIII, § 2(a)); (2) "Every member . . . against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered, shall be obliged to exhaust all remedies provided for in this Constitution . . . before resorting to any other court or tribunal" (art. XVIII, § 14(a); and (3) "Any party to a case, regardless of whether such party is the accused or not, being aggrieved *of* a decision rendered in the case shall be entitled to the same rights of appeal as are hereinbefore provided for accused" (Art. XVIII, § 2(e)).

It is clear from plaintiff's complaint that he was not given a trial before his removal. Indeed, by constitutional provision, he was not entitled to one. Since it does not appear in the complaint that plaintiff was ever "accused" of anything and disciplinary action thereafter taken, he has no right to appeal under article XVIII, section 2(a), *supra*. The same may be said with respect to article XVIII, section 14(a), *supra*. But section 14(a) obligates a *member* to seek redress within the union itself from "adverse rulings or decisions." However, plaintiff's discharge was not a ruling or decision adverse to him as a "member," but only terminated his status as an employee. Plaintiff's membership continued for some time after his discharge. It must be remembered that plaintiff held a dual status. He was an employee and also a member of the union. This section does not apply to employees. The

fact that plaintiff was also a member would not render applicable section 14(a) unless the ruling or decision was adverse to plaintiff in his role as a union member, as distinguished from his status as an employee. This it was not. Lastly, as there was no "case" plaintiff certainly could not be aggrieved as a result of a decision rendered in the case pursuant to article XVIII, section 2(e), *supra*. Therefore, the conclusion seems inescapable that the union provided no internal procedures whatsoever by which plaintiff could appeal his discharge.

■ With respect to plaintiff's second cause of action, it affirmatively appears from the face of the complaint that he did not exhaust available remedies within the union itself and for that reason, fails to state a cause of action. (*DeGonia* v. *Building Material etc. Union, supra.*)

Plaintiff, by reference, made the constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a part of his second cause of action. It was then alleged that the defendant union was subject to this constitution. Pertinent provisions of the above constitution with respect to appeals have been set forth above.

We are of the opinion that the issuance of the withdrawal card to plaintiff constituted a ruling or decision adverse to plaintiff as a "member" of the union and was appealable within the union itself. Although no formal charges were filed against plaintiff, the procedures for internal review provided for in article XVIII, section 2(a), *supra*, are made applicable by article XVIII, section 14(a), *supra*, to an "adverse ruling or decision."

Furthermore, article XVII, section 5(d), dealing with reactivation of membership by a person to whom a withdrawal card has been issued, provides, in part, as follows: "Any ex-member out on a withdrawal card and desiring to return to membership, must first deposit his withdrawal card with the local union by which it was issued; . . . Refusal of any local union to accept a withdrawal card shall be subject to appeal in accordance with appeal procedure provided for by this Constitution. . . ." This section provides plaintiff with the procedural opportunity for readmission to the defendant local if he desires such membership, and an internal remedy of review should his application be rejected. But it does not appear that plaintiff took any steps along this line.

In fact, plaintiff alleges in the second cause of action that he ''has no administrative remedy to resort to for the restoration of his rights as embodied in his Union membership.'' This allegation, we believe, was sufficient to apprise the court below that plaintiff had not sought to utilize the appeal procedures provided for in the union constitution, set forth above.

In *Holderby* v. *International Union etc. Engrs.*, 45 Cal.2d 843, at 846 [291 P.2d 463], the court discusses the failure to exhaust the remedies provided for by a union, as follows: ''It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance. (Citations.) This rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (citation), and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief. (See *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558 [277 P.2d 464], and cases collected at p. 563.) Such rules are based on a practical approach to the solution of internal problems, complaints and grievances that arise between parties functioning pursuant to special and complex agreements or other arrangements. They make possible the settlement of such matters by simple, expeditious and inexpensive procedures, and by persons who, generally, are familiar therewith.''

It is thus clear that as to his status as a member of the union plaintiff should first exhaust his internal remedies before resorting to the courts and that he has failed to do this.

The judgment is reversed as to plaintiff's first cause of action and affirmed as to the second cause of action.

Ashburn, J., and Herndon, J., concurred.