[Civ. No. 26357.   Second Dist., Div. Four.   Mar. 18, 1963.]

PETER E. PETERMANN, Plaintiff and Respondent, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 396, Defendant and Appellant.

156

Brundage, Hackler & Roseman and Charles K. Hackler for Defendant and Appellant.

Findlay A. Carter and Robert P. Schifferman for Plaintiff and Respondent.

KINGSLEY, J.—For almost 10 years plaintiff was employed by defendant union as a business agent. In October 1955 he was summarily discharged. He brought the present action for declaratory relief, seeking a ruling that his discharge was unlawful and for damages for loss of earnings.

Plaintiff's employment admittedly was one at will. His contention is that he was discharged solely because he had disobeyed the orders of his superior, the secretary-treasurer

of the union, to testify falsely before a legislative investigating committee. The position of defendant union is that plaintiff's discharge was solely (a) because plaintiff had engaged in sundry unethical, dishonest and criminal conduct as established by testimony of another witness at the legislative hearing coupled with other information, and (b) because of allegedly false statements made by plaintiff in his statement to the committee which statements were derogatory of the union's then attorney.

Originally, defendant moved for, and secured, a judgment on the pleadings on the theory that an employment at will can be terminated without liability for any reason or for no reason. This judgment was reversed by Division Two of this court (*Petermann* v. *International Brotherhood of Teamsters,* 174 Cal.App.2d 184 [344 P.2d 25]), the court saying:

". . . in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury. To hold otherwise would be without reason and contrary to the spirit of the law. The public policy of this state as reflected in the Penal Code sections referred to above would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury. To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and serve to contaminate the honest administration of public affairs. This is patently contrary to the public welfare. The law must encourage and not discourage truthful testimony. The public policy of this state requires that every impediment, however remote to the above objective, must be struck down when encountered," (P. 189.)

Upon remand, the case was tried without a jury resulting in a judgment that the discharge was unlawful and granting plaintiff $50,000 as damages for loss of earnings. The judgment ran only against defendant union, being dismissed as to the defendant officer. This appeal followed.

Defendant urges in support of a reversal that (1) the evidence is insufficient to support the judgment; (2) even if the

discharge was unlawful, plaintiff is barred by his improper conduct from seeking reinstatement or damages; and (3) the damages were excessive.

## I

There is evidence in the record which, if believed, sustains the court's finding that the discharge was because of plaintiff's refusal to commit perjury. The inferences to be drawn from discrepancies in the testimony of plaintiff, and from the changes he made in his deposition, as well as the inferences to be drawn from the discrepancies and evasions of the defendant's witnesses, were explored at length on several occasions during a four-day trial. They are for the trial court and not for us.

## II

Defendant urges at length that, even if plaintiff was discharged for the reason assigned by him, he should not be restored to his position because he was shown to be guilty of conduct so against public policy as to require that any remedy be denied him.

In the first place, the trial judge found in favor of plaintiff on the question of the commission of most of the allegedly improper conduct. Again the evidence conflicted and we are bound by the trial judge's determination. In the second place, as to the only matters not in dispute—the investments in enterprises identified as the Visco dump and the Solomon loan—the evidence is clear that defendant, its executive officer and its attorney, were aware of these transactions for many months before the discharge and that, in spite of such knowledge, plaintiff was told by the secretary, two days before the discharge, that his work was satisfactory. The issue then is whether or not an employer can rely on conduct known to it, not regarded at the time of discharge as a ground for discharge, in order to sustain an unlawful discharge for an illegal reason.

Defendant urges that if certain sections of the Taft-Hartley Act and of the Landrum-Griffin Act had been in force at the time of plaintiff's alleged conduct, and if that conduct had involved interstate commerce, plaintiff's conduct would have been rendered illegal. It must be remembered that the only possible misconduct which this court can consider, in the light of the supportable findings of the trial court, are the investments in the Visco dump and in the Solomon business, both of which operations plaintiff "policed" on behalf

of the union. It is uncontradicted that the Visco transaction, at least, was known to the union's attorney some years before the discharge and to the executive secretary as well. The latter, in fact, not only did not criticize plaintiff but suggested that he might shortly join with the secretary and a different employer in the same kind of enterprise since the monies previously invested with Visco had been repaid to plaintiff. That the union counsel also had engaged in similar investments is, in spite of a labored explanation, also shown by the record.

We are cited to no statute or decision making such investments illegal under California law. Whatever we may think of them as a matter of social policy, it remains for the Legislature and not for us to set the limits of action by union officers and agents. Certainly, a subordinate union official cannot justly be charged with unethical conduct when his action was known to, accepted by, and duplicated by, his superiors.

In addition, we are in accord with the admonition of the appellate court on the earlier appeal that "The public policy of this state requires that every impediment, *however remote to the objective,* must be struck down when encountered." (Italics added.)

The trial court has found that the present and belated reliance on the alleged derelictions of plaintiff was not bona fide. Since they are now urged only to support the original illegal discharge, they are subject to the same rule; they are mere impediments to the basic public policy and must be struck down.

### III

On the issue of the amount of damages, defendant makes two contentions:

(1) That there is no evidence to sustain damages for $50,000. In this defendant is in error. Plaintiff testified to loss of earnings of $32,000 at the time of trial. Taking his age into consideration, the additional $18,000 is less than his predictable earnings to the age of retirement under his employment arrangement. As plaintiff points out, defendant made no effort to prove its allegation of failure to mitigate an issue on which the burden of proof lay with the union. (*Gregg* v. *McDonald,* 73 Cal.App. 748, 757 [239 P. 373].)

(2) That, in any event, plaintiff cannot recover for earnings beyond July of 1956. This contention rests on the

fact that, in that month, defendant was expelled from the union and that the expulsion has become final by reason of plaintiff's failure to exhaust his intraunion remedies for review (See *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184, 191-192). Defendant argues that union membership was a condition precedent to employment as a business agent and that plaintiff would, thus, have been dismissed in July 1956 at any event.

It is to be noted that plaintiff's expulsion did not come until about 10 months had elapsed after the dismissal, within which time the union had voluntarily issued to plaintiff an "Honorable Withdrawal Card." The trial judge found, on evidence sufficient to support his finding, that the expulsion, coming three months after the instant action was brought, was not bona fide and would not have been taken except for plaintiff's original refusal to commit perjury. The same considerations that deny an employer the right to dismissal at will as a punishment for truthful testimony apply here. An expulsion from a union, based (as the trial court could and did properly find) on a refusal to commit perjury is equally ineffective. It is true that, as noted in the prior appeal (*Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184, 191-192), plaintiff failed to exhaust the remedies prescribed by the constitution of the union for seeking reinstatement. But the fact that plaintiff, for procedural reasons, cannot now procure reinstatement into the union does not permit the union to take further advantage of its illegal act.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1963.