**Vernon L. CREWS, Plaintiff,**

v.

**MEMOREX CORPORATION, Defendant.**

**No. CA 83–3750–T.**

United States District Court,
D. Massachusetts.

May 24, 1984.

---

Norman Jackman, Comras & Jackman, Boston, Mass., for plaintiff.

Sandra L. Lynch, Foley, Hoag & Eliot, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Vernon Crews, a male over age 40, was employed by defendant Memorex Corporation for fourteen years. On August 18, 1982, Crews was discharged and replaced by a younger employee. He then brought this multi-count action based on a claim that he was wrongfully discharged because of his age.

Currently at issue is defendant's motion to dismiss counts III and IV of the complaint.[1] Count III is a claim under Massachusetts law for breach of the implied covenant of good faith and fair dealing. Count IV seeks recovery for the intentional infliction of emotional distress.

## I.

### Breach of the Implied Covenant

With regard to count III, plaintiff's theory is that a discharge in violation of the public policy against age discrimination constitutes a breach of the implied covenant of good faith and fair dealing. In support of its motion to dismiss, defendant argues that the Supreme Judicial Court has never held a discharge to be unlawful merely because it was violative of some public policy.

In Massachusetts, employees may not be dismissed at the whim of an employer. Erosion of the once traditional "employment at will" doctrine began with *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977). There, the employer discharged a salesman to avoid paying commissions due under a written contract. The SJC held that such a discharge violated an implied covenant of good faith and fair dealing. "Without the judicial recognition of an implied contractual duty, Fortune would have been left remediless...." *Ferrante v. Western Electric Co.*, No. 81–3004–Z, slip op. at 7 (D.Mass., Apr. 29, 1983).

In *Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 429 N.E.2d 21 (1981), the SJC refined this implied duty in two important respects. First, the SJC narrowed the employer's obligation under the new doctrine by holding that "termination in the absence of good cause does not establish bad faith...." *Id.* at ——, 429 N.E.2d at 27. Second, the court indicated that a discharge in violation of a public policy could give rise to a cause of action under the implied covenant. *Id.; see also Cort v. Bristol-Myers*, 385 Mass. 300, 431 N.E.2d 908, 910 (1982).

While this second refinement is obviously relevant to the question at hand, an important distinction must be drawn. Neither *Gram* nor *Cort* involved the violation of a public policy that was already protected by a detailed, remedial statute. For instance, the public policy allegedly violated in *Cort* was the amorphous, statutory right of privacy. *See* Mass.Gen.Laws Ann. ch. 214 § 1B (1977). In contrast, the public policy against age discrimination involved in the instant case is protected by two comprehensive remedial schemes. *See* Mass.Gen. Laws Ann. ch. 151B (1982); 29 U.S.C. § 621 *et seq.* (1977).

This distinction is significant for three reasons. First, Massachusetts law does

---

**1.** At a hearing held on April 25, 1984, Count II of the complaint was dismissed by agreement of the parties.

not look with favor on the creation of duplicative remedies. In *Gram* the SJC refused to adopt a general rule that a discharge without good cause violated the implied obligation of good faith and fair dealing. 384 Mass. at ——, 429 N.E.2d at 27. The court's rationale was:

> The employment security law of the Commonwealth recognizes the right of a wrongfully discharged employee to receive limited payments for a period of time. G.L. c. 151A, §§ 22–37. Our adoption of a common law right of recovery for discharge without cause would tend to duplicate (or perhaps supersede or supplement) certain benefits available under the employment security law.

*Id.* at ——, 429 N.E.2d at 28; *see also Conkling v. Moseley, Hallgarten, Estabrook & Weeden Inc.*, 575 F.Supp. 760 (D.Mass.1983) (refusing to interpret Chapter 93A so as to provide duplicative remedy for securities violation).[2]

Second, the theoretical reason for creating a common law tort action based on public policy is absent when a statutory remedy is available. The Second Restatement of Torts indicates that such common law actions are properly created to protect a statutory right when no other civil remedy is available. *See* Restatement (Second) of Torts § 874A (Tent. Draft No. 23 1977).[3]

Confronted with this "right without a remedy" scenario, courts recognize a common law action in order to fill the legislative gap. *See* Hart and Sax, *The Legal Process: Basic Problems in the Making and Application of Law* (Tent.Ed.1958). When a statutory remedy is available, there is no gap and the justification for judicial creativity is absent. *See* Williams, "Statutes as Sources of Law Beyond Their Terms," 50 Geo.Wash.L.Rev. 554, 576–77 (1982).

Third, creation of a common law action based on the public policy against age discrimination would interfere with the comprehensive remedial scheme in Chapter 151B. An antidiscrimination statute such as Chapter 151B reflects the legislature's balancing of competing interests. Employees are protected against certain types of discharge. Employers are protected from unnecessary litigation by a relatively short statute of limitations, *see* ch. 151B § 5 (six months), and a mandatory conciliation process, *see Hadfield v. Mitre Corp.*, 562 F.2d 84, 87 (1st Cir.1977).[4] The creation of a common law action would allow an employee to bypass the legislatively mandated prerequisites for judicial relief.

■ For all of these reasons, this court holds that Massachusetts law does not recognize a common law action for discharge

---

**2.** One might argue that *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811 (1982), stands for the proposition that Massachusetts' statutory remedy for age discrimination, *see* Mass.Gen.Laws Ann. ch. 151B, is not exclusive of common law actions. In *Comey* the plaintiff-employee sued a third party on the theory that the third party induced the employer to terminate the employee because of his age. The SJC held that the passage of the Massachusetts antidiscrimination statute did not repeal existing common law remedies such as the tort of interference with advantageous relations. But *Comey* is distinguishable from the instant case. Prior to the passage of Chapter 151B, there was no remedy against an employer for employment discrimination. *See Johnson v. United States Steel Corp.,* 348 Mass. 168, 202 N.E.2d 816 (1964). In the instant case the issue is not whether an existing common law remedy was superseded by a subsequent statutory enactment. Rather, the question here is whether a new common law remedy against the employer should be created, notwithstanding an existing statutory remedy. Judge Zobel has answered this question in the negative: "the existence of antidiscrimination statutes militates against the *creation* of new common law remedies...." *Ferrante* slip op. at 8 n. 4.

**3.** In Massachusetts, the protection against discharge in violation of public policy has developed under a contract theory. In many other jurisdictions this protection has developed under a tort theory. At least one commentator has noted that the differences between the two theories are rather limited. *See* Note, "Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith," 93 Harv.L.Rev. 1816 (1980).

**4.** It is worthy of note that the conciliation process can be cut off after ninety days if the employee chooses to commence a court action. *See* Mass.Gen.Laws Ann. ch. 151B § 9.

in violation of the public policy against age discrimination.[5]

## II.

### Intentional Infliction of Emotional Distress

■ Count IV states a claim for the intentional infliction of emotional distress. Defendant argues that this claim is barred by the exclusivity provision of the Massachusetts Workmen's Compensation Act, Mass.Gen.Laws Ann. ch. 152 § 24 (1958). In response, plaintiff argues that the exclusivity provision applies only to injuries compensable under the act and ·that his injury was not compensable because it did not incapacitate him for a period of five days, see Mass.Gen.Laws Ann. ch. 152 § 29.

The Supreme Judicial Court's opinion in Foley v. Polaroid Corp., 381 Mass. 545, 413 N.E.2d 711 (1980), is dispositive on this issue. The court squarely held that mental or emotional disorders resulting from stressful, work-related incidents are compensable under Workmen's Compensation. Id. at 550, 413 N.E.2d at 714. Tort actions based on these injuries, therefore, are barred by the exclusivity provision. Id. at 550, 413 N.E.2d 714.[6]

■ Plaintiff's argument that the exclusivity provision does not bar tort actions based on nondisabling injuries is faulty. When an injury is within the class of those covered by the workmen's compensation statute, but no compensation is available because the injury is not disabling as defined in the statute, the exclusivity provision nonetheless bars a tort suit against the employer. Larson, The Law of Workmen's Compensation, § 65.51 (1983) citing Zeigale's Case, 325 Mass. 128, 89 N.E.2d 264, 265 (1949). This rule follows from the balance of employer and employee interests struck by the legislature upon passage of the workmen's compensation law.

For all the above reasons, defendant's motion to dismiss counts III and IV will be allowed.

An order will ISSUE.

5. This holding is consistent with that of Judge Zobel in Ferrante v. Western Electric Co., slip op. at 7–8. Moreover, it is in line with the law of many other jurisdictions. See McCluney v. Joseph Schlitz Brewing Co., 489 F.Supp. 24 (E.D. Wis.1980) (sex discrimination); Schroeder v. Dayton-Hudson Corp., 448 F.Supp. 910 (E.D. Mich.1977) (same); Wehr v. Burroughs Corp., 438 F.Supp. 1052 (E.D.Pa.1977) (age discrimination); Howard v. Dorr Woolen Co., 120 N.H. 295, 414 A.2d 1273 (1980) (same).

In so holding, this court is not unmindful of the decision in McKinney v. National Dairy Council, 491 F.Supp. 1108 (D.Mass.1980). There, Judge Keeton held that a discharge motivated by age discrimination was actionable under the implied covenant of good faith and fair dealing. The McKinney court relied on cases such as Petermann v. International Bhd. of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), to support its decision. In Petermann an employee was discharged because he refused to commit perjury for his employer. Id. at 187, 344 P.2d at 26. While the employer's solicitation of perjury was a criminal offense, the employee had no civil remedy with regard to the discharge. A decision such as Petermann does not support recognition of a common law action where an employee has an adequate statutory remedy. See Olsen, "Wrongful Discharge Claims Raised

by At-Will Employees: A New Legal Concern for Employers," 32 Lab.L.J. 265, 293 (1981); cf. Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978) (recognizing common law action despite the presence of statutory remedy on theory that statutory remedy was inadequate).

6. In Foley the SJC also held that a civil rights action is not barred by the exclusivity provision of Chapter 152. See 381 Mass. at 553, 413 N.E. at 716. In discussing this holding, the court stated, "We hold only that a violation of the employee's civil rights is not a 'personal injury arising out of and in the course of employment' which would be compensable under the act." Id.

Based on this language one might argue that an action to recover for emotional distress caused by an employer's violation of an employee's civil rights is not barred by section 24. This argument is faulty. Foley makes it clear that "the key to whether the Workmen's Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiff makes claim, not the nature of defendant's act...." Id. at 553, 413 N.E. at 716. Whether emotional distress is caused by age discrimination or some other form of abusive treatment, the nature of the injury remains the same.