**Allen S. NELSON, Appellant (Plaintiff),**

**v.**

**CRIMSON ENTERPRISES, INC., a Georgia corporation, and Thomas W. Durant, Appellees (Defendants).**

**No. 88–299.**

Supreme Court of Wyoming.

July 11, 1989.

---

**74**

Jack Gage of Whitehead, Gage & David-
son, P.C., Cheyenne, for appellant.

Paul J. Hickey and John M. Walker of
Hickey & Evans, Cheyenne, for appellees.

Before CARDINE, C.J., THOMAS,
MACY and GOLDEN, JJ., and
BROWN, Ret. J.

BROWN, Justice, Retired.

In his wrongful termination action, appel-
lant Allen S. Nelson contends that he was
fired by his employer because he made a
telephone call to the Waste, Fraud and
Abuse Hotline at Francis E. Warren Air
Force Base. Appellees state that Nelson
was fired for insubordination. The trial
court granted appellees' summary judg-
ment and this appeal followed.

Appellant states the following issues:

1. Can a Wyoming employee state a
cause of action for wrongful termination
based upon a public policy exception to
the employment at will doctrine?

2. If the answer to No. 1 is either "no"
or in the alternative this court does not
choose to decide this question at this
time, can a civilian employee working for
a United States Department of Defense
contractor state a cause of action for
wrongful termination based upon the lan-
guage of 10 U.S.C. § 2409?

3. Assuming that the answer to either
numbers 1 or 2 is yes, under the facts of
this case, is there a genuine issue as to
any material fact so that the trial court
erred in granting defendants' motion for
summary judgment?

4. Did the trial court err when it failed
to grant plaintiff's motion for partial
summary judgment, on the question of
plaintiff's wrongful termination which
plaintiff contended had been determined
by the State Unemployment Commis-
sion?

We will affirm.

Appellant (Nelson) was employed at
Francis E. Warren Air Force Base by a
government defense contractor, Crimson
Enterprises, Inc. (Crimson), and worked un-
der the supervision of Thomas Durant (Du-
rant). His employment by Crimson lasted
from May 1983 until his termination on
December 30, 1987. Events pertinent to
this appeal transpired on December 30,
1987 as follows: A considerable amount of

snow had fallen by the time Nelson went to work. He parked his car in front of the home of a base resident who had cleared snow to park a personal vehicle. The base resident called the Crimson office and asked that the Nelson vehicle be moved from the shoveled-out parking place. Durant said that he would arrange to have that done. Durant contacted a co-worker of Nelson's to convey the message that the vehicle should be moved, but Nelson did not comply with that request. After the lunch hour, Durant found Nelson and personally directed him to move his vehicle.

Nelson drove the company vehicle back to the office at a high rate of speed. He parked, shoveled out another area of snow, and moved his vehicle to the newly cleared area. Durant berated Nelson for shoveling snow on company time and Nelson retorted that he had shoveled snow for an hour that morning without recompense. Durant then directed the secretary to pay Nelson for an hour overtime.

When Nelson moved his vehicle, he went in and out of the office getting parts and slamming the door. Durant ordered him not to slam the door anymore and, ultimately, Nelson went into Durant's office where they had a loud and hostile confrontation. Durant told Nelson to get back to work or get his tools and leave. Nelson left Durant's office and, using a telephone at the desk of Durant's secretary, Dee Velasquez, called the base information operator and asked for the Waste, Fraud and Abuse Hotline number.[1] In his testimony, Nelson stated that he did call the Waste, Fraud and Abuse Hotline and talked to the answering service saying, "I want to report some waste, fraud and abuse, my name is Scott Nelson and my phone number is 634–6420."

Neither Dee Velasquez nor Craig Hanesworth, who was also in the outer office, heard an alleged second call, although they heard the first call when Nelson asked for the "Waste, Fraud and Abuse Hotline" number.

Nelson returned to work but was called back to the office late in the afternoon and given a letter of termination for insubordination. Between the time Nelson left the office and was called back and terminated, Durant called the Department of Labor to inquire if he could fire Nelson.

Nelson subsequently filed an application with the State of Wyoming Unemployment Commission (Commission) which Crimson contested. Nelson's claim for unemployment payments went to hearing before the Commission and the Commission hearing officer determined that Nelson was not fired for cause. The hearing officer's decision was appealed by Crimson and affirmed by the Commission.

■ An "at-will" employee may be discharged at any time and for any reason or for no reason. In *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 27 (Wyo. 1984), this court stated: "[E]mployment for an indefinite period may be terminated by either party at any time and for any reason without incurring liability." See also *Siebken v. Town of Wheatland*, 700 P.2d 1236, 1237 (Wyo.1985); *Lukens v. Goit*, 430 P.2d 607, 611 (Wyo.1967); *Long v. Forbes*, 58 Wyo. 533, 136 P.2d 242, 246 (1943); *Casper National Bank v. Curry*, 51 Wyo. 284, 65 P.2d 1116, 1120–21 (1937). Nelson concedes that he was an "at-will" employee.

This court has recognized limited exceptions to the at-will relationship. However, those exceptions are not applicable to this appeal. *Griess v. Consolidated Freightways*, 776 P.2d 752; *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986); *Alexander v. Phillips Oil Co.*, 707 P.2d 1385, 1387–89 (Wyo.1985) and *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo.1985).

Appellant urges this court to: (1) Adopt a "public policy" exception to the employment-at-will doctrine;[2] (2) adopt the doc-

---

1. Appellees here are defendants in criminal case 88–00091, United States District Court for the District of Wyoming. That case involves the defendants' activities at Warren Air Force Base.

2. This doctrine was explained in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1031–32 (1985) (footnotes omitted):

trine of an implied duty of good faith and fair dealing in the employment agreement;[3] and (3) recognize a cause of action created by 10 U.S.C. § 2409 (Supp. V 1987) which states in part:

An employee of a defense contractor may not be discharged, * * * as a reprisal for disclosing to * * * the Department of Defense * * * information relating to a substantial violation of law relating to a defense contract * * *.

If this court should adopt any of the theories urged by Nelson, appellees then urge that we adopt the doctrine of "dual motive," succinctly stated in *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 122 (1978):

[E]ven when an important public policy is involved, an employer may discharge an employee if he has a separate, plausible, and legitimate reason for doing so.

In this case we need not adopt nor refuse to adopt any of the theories or doctrines urged by Nelson. He has not shown specific facts demonstrating that a genuine issue of material fact exists under any of the three theories he suggests.

In *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987), we held:

A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *England v. Simmons*, Wyo., 728 P.2d 1137, 1140–1141 (1986). We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the

---

The public policy exception to the at-will doctrine began with a narrow rule permitting employees to sue their employers when a statute expressly prohibited their discharge. See *Kouff v. Bethlehem–Alameda Shipyard*, 90 Cal.App.2d 322, 202 P.2d 1059 (1949) (statute prohibiting discharge for serving as an election officer). This formulation was then expanded to include any discharge in violation of a statutory expression of public policy. See *Petermann v. Teamsters Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (discharge for refusal to commit perjury). Courts later allowed a cause of action for violation of public policy, even in the absence of a specific statutory prohibition. See *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (discharge for being absent from work to serve on jury duty). The New Hampshire Supreme Court announced perhaps the most expansive rule when it held an employer liable for discharging an employee who refused to go out with her foreman. The court concluded that termination "motivated by bad faith or malice or based on retaliation is not [in] the best interest of the economic system or the public good and constitutes a breach of the employment contract." *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 133, 316 A.2d 549, 551 (1974). Although no other court has gone this far, a majority of the states have now either recognized a cause of action based on the public policy exception or have indicated their willingness to consider it, given appropriate facts. The key to an employee's claim in all of these cases is the proper definition of a public poli-cy that has been violated by the employer's actions.

3. A number of jurisdictions have recently held that at-will employment contracts, like other contracts, contain an implied covenant of good faith and fair dealing in their performance or enforcement. *Mitford v. de Lasala*, Alas., 666 P.2d 1000 (1983); *Gates v. Life of Montana Insurance Company*, Mont. [196 Mont. 178] 638 P.2d 1063 (1982); *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Fortune v. National Cash Register Company*, 373 Mass. 96, 364 N.E.2d 1251 (1977). These courts have looked at the circumstances surrounding the employee's dismissal and the duration of his employment in determining whether the employee stated a valid claim for breach of contract. In *Mitford v. de Lasala*, supra, and *Fortune v. National Cash Register Company*, supra, the courts held that the duty of good faith inherent in an at-will employment contract prohibited an employer from dismissing a long-term employee in order to prevent his sharing in profits or collecting commissions pursuant to the contract. In *Gates v. Life of Montana Insurance Company*, supra, and *Cleary v. American Airlines, Inc.*, supra, the courts overturned summary judgments against employees who alleged that their employment contracts for indefinite terms had been terminated contrary to established termination procedures. * * * We will reserve a decision on the viability of this doctrine in this state until a proper case is before us. *Rompf*, 685 P.2d at 27–28 (footnote omitted).

motion giving him all favorable inferences that can be drawn from the facts. Id. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden. *Jones Land & Livestock Co. v. Federal Land Bank of Omaha*, Wyo., 733 P.2d 258, 263 (1987). Evidence opposing a summary judgment that is conclusory or speculative is insufficient and the trial court has no duty to anticipate possible proof. *Gates v. Life of Montana Insurance Company*, 196 Mont. 178, 638 P.2d 1063, 1066 (1982).

■ Apparently Nelson does not contend that Durant did not have cause to fire him; but rather contends that a later improper motive to fire Nelson developed. In his reply brief, Nelson states:

If Durant had fired Nelson during the confrontation, then Nelson would not have a cause of action.

Nelson also says:

[O]f course, Nelson can be fired for talking in a derogatory manner to Durant. If Durant had fired Nelson on the spot, no argument.

Nelson contends, however, that there is a question to be resolved by the trier of fact: "Why did Durant fire Nelson?" The affidavits and depositions considered by the court, insofar as they touch on the reason for firing, indicate that Nelson was fired for insubordination and talking in a derogatory manner to Durant, his supervisor. No other reason is stated in the evidence before the district court. Appellees made a prima facie case showing that no genuine issue of material fact existed. The burden therefore shifted to Nelson to present specific facts showing that an issue did exist. *Boehm*, 748 P.2d at 704; *Gates*, 638 P.2d at 1063.

Nelson speculates that he was fired because of his telephone call to the "hot line." There is no evidence to support this suspicion. There is no evidence that Durant even knew about the "hot line" call, only speculation that he may have known. Mr. Hanesworth was in the outer office when Nelson made the call. In Hanesworth's deposition he was asked about Durant's knowledge of the "hot line" call.

Q. [Mr. Gage] Do you recall any discussion between Velasquez and Durant wherein they discussed the fact that Scott had called for the number for Waste, Fraud and Abuse?

A. No, sir.

Q. Do you recall any discussion between you and Velasquez—

A. No.

Q. —on that same subject? And you do recall any discussion between Durant and you about the fact that he called for that number?

A. No, sir.

Durant's deposition testimony is consistent with Hanesworth's testimony.

Nelson further speculates that Durant overheard his call to "Waste, Fraud and Abuse." This guess is based on the proximity of Durant's office to the telephone from which the call was made. The telephone was fifteen feet from the wall separating Durant's office from the desk of Ms. Velasquez. We do not know if Durant had his ear to the wall in his office or if he was at a more distant point in his office working. Nelson produced deposition testimony that people in the outer office heard Nelson and Durant exchanging pleasantries (actually hollering) in Durant's office. Also, Ms. Velasquez heard Durant make the call to the Department of Labor. Nelson employs a speculation upon a speculation to support the notion that he was improperly fired. Nelson has not met his burden by presenting specific facts showing that a genuine issue of material fact exists. *Boehm*, 748 P.2d at 704. The trial court need not anticipate possible proofs. *Gates*, 638 P.2d at 1063.

After Nelson's termination at Crimson, he filed a claim for unemployment compensation with the Wyoming Employment Security Commission. On February 24, 1988, a hearing on Nelson's termination was held by the Commission's hearing officer. The hearing officer ruled that Nelson's termination was not for cause and that he was entitled to unemployment compensation. Crimson appealed that decision. On May 24, 1988, the Wyoming Employment Securi-

ty Commission affirmed the hearing officer. Nelson contends that "the Employment Security Commission's finding is conclusive in this case and does not need to be relitigated."

Nelson contends in his fourth assignment of error that the trial court erred in its failure to grant his motion for partial summary judgment on the question of his wrongful termination which he contends had been determined by the State Unemployment Commission. Appellees contend, among other things, that W.S. 27–3–406(c) provides that the Commission's findings of fact and conclusions of law are not binding. The statute provides:

Any determination, redetermination, finding of fact, conclusion of law, order, decision, or final judgment entered or made by a deputy, appeal tribunal, special examiner, the executive director, the commission, or a court of competent jurisdiction pursuant to this act or the rules and regulations of the commission is binding only between the commission and all adverse parties thereto, and is not binding, conclusive, or admissible in any separate or subsequent action or proceeding between an individual and employing unit previously subject to this act, regardless of whether the prior action before the commission was between the same or related parties or involved the same facts.

The action here was commenced January 27, 1988. The hearing of the Commission was held before the effective date of the statute (June 9, 1988). Appellees point to language in the statute which they claim covers judicial action that is subsequent to proceedings before the Commission, notwithstanding the fact that the circumstances giving rise to the cause of action (termination December 30, 1987) occurred before the statute and the Commission's actions.

■ We need not decide if W.S. 27–3–406(c) has impact on this litigation. We think the rule set out in the statute was the law before the legislature acted. A legislative enactment is frequently a codification of the common law. We think that is the case here. Nelson says in his reply brief:

The legislature is presumed to have intended a change in the existing law and the courts will endeavor to give effect to the change. *Albany County Weed & Pest Control v. Board of County Comm'r. of County of Albany,* 592 P.2d 1154, 1157–58 (Wyo.1979) (dictum).

Appellate courts recite the above reasoning when they want to hold that there was a change in the law. If the court wants to hold that there was no change in the law, they do not attribute that much knowledge to the legislature. In any case, a presumption is just that—a presumption, and used only in the absence of better reasoning. "The legislature [cannot] be restrained from legislating upon any subject." *Story v. Jersey City and Bergen Point Plank Road Company,* 16 N.J.Eq. 13, 84 Am.Dec. 134 (1863).

■ In his fourth and final assignment of error, Nelson apparently is urging the court to apply the doctrine of collateral estoppel to the circumstances here. The issues before the district court were separate, distinct and *totally* unrelated to the limited issue before the Commission.

The question of whether or not Nelson was discharged for misconduct so as to disqualify him for benefits is distinct from the question of whether or not Nelson's firing, as an at-will employee, was *wrongful.* The fact that the Commission determined that Nelson qualifies for unemployment benefits does not decide whether he was wrongfully terminated from his job. That question was never fully or fairly litigated before the Commission, nor was it distinctly and directly ruled upon by the Commission. See *Delgue v. Curutchet,* 677 P.2d 208 (Wyo.1984).

Any notion of preclusion, based upon the prior Commission proceeding, requires, at a minimum, that the specific issue before the Commission be the same as the issue before this court. The issues in this case are separate and distinct from the sole and limited issue before the Commission. See *Peffer v. Bennett,* 523 F.2d 1323 (10th Cir. 1975) and *Rust v. First National Bank of Pinedale,* 466 F.Supp. 135 (D.Wyo.1979).

The doctrine of collateral estoppel, as that doctrine relates to findings or conclusions of the Commission, does not apply to the specific issues currently before this court. Nelson's motion for summary judgment was properly denied. The summary judgment in favor of appellees was properly granted.

Affirmed.